MARCHAND v HENRY FORD HOSPITAL

Docket No. 55761. Argued April 9, 1975 (Calendar No. 11).—Resubmitted after remand February 9, 1976. Decided December 7, 1976.

Clyde T. Marchand, administrator of the estate of Duane C. Marchand, deceased, in the course of a medical malpractice suit against Henry Ford Hospital, Dr. Klaus Anselm, Dr. Thomas R. Liebermann, Dr. Thomas A. Fox, Jr., and Dr. Michael D. Brennan, directed 14 interrogatories concerning the procedure of hyperalimentation to defendant Henry Ford Hospital. The Wayne Circuit Court, Michael L. Stacey, J., without explanation, sustained the hospital's objections to interrogatories 6 through 14, but ordered interrogatory 5 to be answered. The Court of Appeals, Lesinski, C. J., and V. J. Brennan and Bashara, JJ., ordered the hospital to answer interrogatories 8 through 14 (Docket No. 19145). The plaintiff appealed as to numbers 6 and 7 which concerned the number of patients who received the treatment before the decedent and how many died. The Supreme Court remanded to the circuit court for a hearing on whether the information sought by those questions is protected by the act regulating licenses of hospitals, and retained jurisdiction. The circuit court, after a hearing, ordered the hospital to answer numbers 6 and 7. *Held:*

1. The evidentiary privilege regarding certain information gathered pursuant to the review function mandated by the statute regulating hospital licenses becomes operative only where the records, data, and knowledge have been collected for or by individuals or committees assigned this review function.

2. The testimony taken in circuit court on remand indicates that the information sought by interrogatories 6 and 7 was not collected pursuant to a directive from a committee assigned the review function, but for the personal information of the doctor who voluntarily gathered the information. Subsequent submission of the information assembled to a general staff meeting

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 40 Am Jur 2d, Hospitals and Asylums §§ 42–44.
[3] 23 Am Jur 2d, Depositions and Discovery § 149.

does not satisfy the statutory "collection" requirement to bring the information within the ambit of the evidentiary privilege.

3. Determining matters of the relevance of interrogatories is within the trial judge's discretion, and the Supreme Court will not interfere absent an abuse of that discretion. While the trial judge made no specific finding as to relevance, the finding is implied in the order to answer the questions.

Affirmed.

1. EVIDENCE—HOSPITALS—PRIVILEGE.

The evidentiary privilege created by the statute regulating hospital licenses regarding certain information gathered pursuant to the review function mandated by the statute becomes operable only where the records, data, and knowledge sought to be protected have been collected for or by individuals or committees assigned this review function (MCL 331.422; MSA 14.1179[12]).

2. EVIDENCE—HOSPITALS—PRIVILEGE.

Information concerning a feeding treatment administered to patients at a hospital which was not collected pursuant to a directive from a committee assigned the review function under the statute regulating hospital licenses but for the personal information of the doctor who voluntarily gathered the information was not brought within the ambit of an evidentiary privilege under the statute by subsequent submission at a general staff meeting of the hospital (MCL 331.422; MSA 14.1179[12]).

3. DISCOVERY—INTERROGATORIES—RELEVANCE.

Determining matters of the relevance of interrogatories is within the trial judge's discretion, and the Supreme Court will not interfere absent an abuse of that discretion (GCR 1963, 309.4).

*Lopatin, Miller, Bindes & Freedman* (by *Michael A. Gantz)* for plaintiff.

*Kitch, Suhrheinrich & Getto, P. C.* (by *Norman D. Tucker),* for defendants.

COLEMAN, J. Plaintiff directed 14 interrogatories to defendant Henry Ford Hospital in the course of this malpractice suit against defendants. The ques-

tions relate to the feeding technique, "hyperalimentation".[1] The hospital objected to interrogatories 5 through 14. The trial judge, on October 26, 1973, upheld the objections to all excepting number 5, which he ordered to be answered. He disclosed no factual or legal basis for the order. Plaintiff appealed the order and on March 18, 1974 the Court of Appeals ordered defendant hospital to answer interrogatories 8 through 14, finding that "[t]he information sought to be gained by the interrogatories allowed is not protected from disclosure by § 12(2)[2] of the act regulating licenses of hospitals, 1968 PA 17, MCLA 331.411, *et seq.;* MSA 14.1179(1) *et seq.".*

Plaintiff next appealed the Court of Appeals order as it related to questions 6 and 7, the only interrogatories which the hospital is not now required to answer. These read:

---

[1] The instant case involves intravenous hyperalimentation. This is a method of providing nutrition in the form of hydramine or amino acids as a source of calories in excess of the body's needs. Hyperalimentation provides enough nutrition to keep a patient alive for prolonged periods.

[2] MCLA 331.422; MSA 14.1179(12) provides in pertinent part:

"Sec. 12. (1) The governing body of each hospital shall be responsible for the operation of the hospital, the selection of the medical staff, and for the quality of care rendered in the hospital. The governing body shall cooperate with the director of public health in the enforcement of this act; insure that all physicians and other personnel for whom a state license or registration is required are currently licensed or registered; insure that physicians admitted to practice in the hospital are granted hospital privileges consistent with the individual training, experience and other qualifications; and insure that physicians admitted to practice in the hospital are organized into a medical staff in such a manner as to effectively review the professional practices of the hospital for the purposes of reducing morbidity and mortality and for the improvement of the care of patients provided in the institution. This review shall include but is not limited to the quality and necessity of the care provided and the preventability of complications and deaths occurring in the hospital.

"(2) All records, data and knowledge collected *for or by individuals or committees assigned this review function* are confidential and shall be used only for the purposes provided in this act, shall not be public records and shall not be available for court subpoena." (Emphasis added.)

"6. Upon how many patients was it [hyperalimentation] used before it was used on Duane C. Marchand?

"7. Of the patients upon whom it was used before Duane Marchand, how many died?"

On May 7, 1975, we remanded *Marchand* pursuant to the following order at 394 Mich 906 (1975):

"On order of the Court, leave to appeal having been granted, briefs presented and arguments heard, this cause is remanded to the Circuit Court for the County of Wayne for further hearing(s) to permit the parties an opportunity to disclose more fully on the record why the information sought by interrogatories 6 and 7 does or does not deserve the protection provided by MCLA 331.422; MSA 14.1179(12).

"The Court anticipates that subsequent to the hearing(s) the record will disclose whether data had been collected relative to the challenged treatment and, if collected, whether it was for the purpose of review as protected by the Hospital Licensing Act. Further, if no data were collected, the record is expected to disclose the extent of the burden which would be imposed upon the hospital if required to gather such.

*"The Court also anticipates that the record will reflect what, if any, relevancy the requested data may have to the death of Duane C. Marchand.*

*"This remand also will afford the circuit judge an opportunity to detail more fully the basis of his order regarding interrogatories 6 and 7.*

"It is further ordered that this Court retain jurisdiction and that final disposition be held in abeyance pending the completion of the hearing(s) on remand and the filing of the supplemental record and findings of the trial judge with this Court.

"The parties will be informed if the Court requires further briefing." (Emphasis added.)

Pursuant to our order, hearings were held on November 13, 1975 and December 19, 1975. Fol-

lowing the hearings, the trial judge issued the following order on January 13, 1976:

"It is hereby ordered that the investigation and research entered into by Dr. Thomas A. Fox was not data or knowledge which was obtained through an assignment for the review function as contemplated by MCLA 331.422 Section 12(1), (2) and (3) and;

"It is hereby ordered that the Defendant answer Interrogatories No. 6 and 7 of Plaintiff's Interrogatories dated September 27, 1973."

Our examination of the transcripts of the hearings indicates that the order of the trial court should be affirmed.

Subsection 2 of MCLA 331.422; MSA 14.1179(12) creates an evidentiary privilege regarding certain information gathered pursuant to the review function mandated in subsection 1 of the statute.

However, in order for the evidentiary privilege to become operable, the "records, data and knowledge" must have been "collected for or by individuals or committees assigned this review function".

At the November 13, 1975 hearing, the following colloquy took place between Dr. Thomas A. Fox and the plaintiff's attorney:

"*Q*. Can you tell us a little bit about under what circumstances it was requested that you, on the patients that you worked on, should keep records in regard to hyperalimentation feeding?

"*A*. There was no request for me to keep records. I did this on my own initiative to see how this procedure worked.

"*Q*. In other words, just for your own, shall we say, education and for your own enlightenment you decided to keep records on the patients that were subjected to your care as to whether or not this procedure was effective or not?

"*A.* That's right.

"*Q.* This would be your own records and not the hospital records that you decided to keep?

"*A.* Well, any record that I keep is the hospital's record, at least to my way of thinking of it.

"*Q.* But you were never requested by anybody on the staff of Ford Hospital that you should keep a specific record in regard to hyperalimentation and its effectiveness in regard to the treatment of patients?

"*A.* No."

The testimony indicates that the information sought by interrogatories 6 and 7 was not collected pursuant to a directive from a "[committee] assigned this review function". While the November 13, 1975 transcript indicates that the information assembled by Dr. Fox was subsequently presented at a general staff meeting, the *ex post facto* submission does not satisfy the "collection" criteria bringing the data within the ambit of the evidentiary privilege.

At the December 19, 1975 hearing the following exchange occurred between defendants' counsel and the trial court:

"*[Defense Counsel]:* So the data that was assembled by Dr. Fox and presented to the committee was data that was at the request of a committee that had the power to—

"*The Court:* Not true. That isn't his story. His story was he made these notes and his investigation on his own volition. He put them in the files because that was the logical place to keep them. Nobody asked him to do that. The only thing that ever happened was that the doctor in charged *[sic]* asked him to prepare a summary of what he had done voluntarily."

We find that the statements of the trial court are supported by the transcripts.

In our May 7, 1975 order, we stated that:

"The Court also anticipates that the record will re-flect what, if any, relevancy the requested data may have to the death of Duane C. Marchand."

There was little discussion of relevancy at the November 13 hearing. However, Dr. Fox did make the statement that "[H]ow many lived because of it would be more like the question you should ask".

At the December hearing, counsel for the plaintiff and the trial judge discussed the issue of relevancy in relation to the disputed questions 6 and 7. Plaintiff's counsel summarized his arguments stating:

"I think it is some of each, your Honor. There's more than one theory in this case. Number one, if he had knowledge that this isn't the type of individual that should be given hyperalimentation, it is very pertinent to this case. Number two, if he didn't give the proce-dure correctly as compared to the people that he'd given it to before and if he changed since, it is very important to the outcome."

While the trial judge made no specific finding as to relevancy, his finding of relevancy is implied in his decision to order the questions to be answered. While we may wish that the trial court had guided us with more elucidation on the question of rele-vancy, we will not disturb his implied finding.

Determining matters of the relevancy of inter-rogatories is within the trial judge's discretion and we will not interfere absent an abuse of that

discretion.[3] We make no comment upon the relevancy of the disputed question at the trial of the instant case. Michigan allows liberal discovery and the criteria utilized as to the relevancy of material differs at the trial and pretrial levels.[4]

Affirmed.

KAVANAGH, C. J., and WILLIAMS, LEVIN, and FITZGERALD, JJ., concurred with COLEMAN, J.

LINDEMER and RYAN, JJ., took no part in the decision of this case.

---

[3] *Walker Metallurgical Corp v Ledoux & Co,* 16 Mich App 588; 168 NW2d 474 (1969). This line of reasoning is in keeping with the general rule that the determination of the relevancy and materiality of evidence is a matter of discretion with the trial judge. *Carreras v Honeggers & Co,* 68 Mich App 716, 724; 244 NW2d 10 (1976); *People v Howard,* 391 Mich 597, 603; 218 NW2d 20 (1974).

*See also* MCLA 769.26; MSA 28.1096 and GCR 1963, 529.1.

[4] GCR 1963, 309.4 states that "Interrogatories may relate to any matters which can be inquired into under sub-rule 302.2" which deals with depositions and their scope of examination.

In the authors' comments to GCR 1963, 302.2 found at 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 42, they state:

"The third limitation, relevancy, should be liberally construed. Sub-rule 302.2(1) specifically provides that relevancy to the subject matter includes relevancy to the claim or defense of the examining party or any other party. Since an important role of discovery is to obtain information which will lead to further investigation, an inquiry should be permitted even though it is not strictly relevant to the precise issues formulated by the pleadings. In this regard, the rule makes it clear that information concerning the existence of books and other objects, and the identity and location of persons having knowledge of relevant facts may be sought upon a deposition."