## Bolton v. Holy Spirit Hospital
## Kipp v. Fitzgerald

*Richard H. Wix,* for plaintiffs.
*Craig Stone,* for defendant Holy Spirit Hospital.
*S. Walter Foulkrod, III,* for defendant Douglas K. Sanderson.

DOWLING, *J.,* March 23, 1984—We are addressing ourselves to both of the above-captioned cases since they each involve an interpretation of the scope of the Peer Review Protection Act[1] as applied to certain discovery problems. We feel that their intertwining may serve to set off the distinctions we are required to make in resolving the issues which, we might add, are complicated by the fact that in neither case has a complaint been filed.

In Bolton v. Sanderson and Holy Spirit Hospital, plaintiffs, husband and wife, are suing defendants for alleged medical malpractice suffered by the wife-plaintiff during a course of treatment rendered by defendant Sanderson which included a number of admissions to defendant hospital. Based upon the Peer Review Protection Act, defendant-physician

_____

1. Act of July 20, 1974, P.L. 564, §1 et seq., 63 P.S. §425.1 (Purdon Supp. 1983-84).

objected to certain questions at his deposition concerning: his differences with other physicians about patient care, physicians who have stated that defendant performed unnecessary surgery, restrictions upon his hospital privileges, and his discussions with the hospital administrators with regard to his surgery. Defendant also objected to a question calling for his current opinion as to the propriety of the operation and to a hypothetical question concerning x-rays.

Also, asserting privilege under the act, defendant hospital objected to certain interrogatories and requests for production of documents which concerned prior complaints, corrective action and the production of Dr. Sanderson's personnel file, as well as other data involved in his supervision.

In Kipp v. Fitzgerald, decedent's widow and administratrix is suing defendant-physician for alleged medical malpractice resulting in decedent's death at Holy Spirit Hospital on May 21, 1982. Defendant had been decedent's personal physician for a number of years prior to decedent's admission to the hospital in May of 1982 and was a member of the staff of Holy Spirit Hospital. Defendant was also a member of the staff of Harrisburg Hospital until sometime in 1977 when he was removed.

Plaintiff has noticed the deposition of the Harrisburg Hospital administrator requesting that he produce defendant's personnel file and has noticed the depositions of the Holy Spirit Hospital records custodian and its administratrix to obtain defendant's personnel file from there. Defendant has moved for a protective order in connection with the Harrisburg Hospital file, while plaintiff has moved to compel the production of the Holy Spirit Hospital file.

The Peer Review Protection Act, passed in 1974, has been the subject of but a few cases. The portion involved in the matters before us is section 4, 63 P.S. §425.4, which provides as follows:

"The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof: Provided, however, that information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings."

More specifically, the problem arises out of the limiting language "arising out of the matters which are the subject of evaluation and review by such committee." It is plaintiffs' position that this confines the confidentiality of the matters to the suit in question. Thus, in the instant case any peer review involving the care and treatment of Mrs. Bolton or of the late Joseph Kipp could not be the subject of dis-

covery, but peer review involving any other patients or matters would be.

Defendants take the position that the act prohibits discovery of the proceedings and records of a review committee in any civil action against a health care professional. Relying on the purpose of the act "to foster the greatest candor and frank discussion at such review meetings," Schwartz v. Tri-County Hospital, 74 D.&C.2d 52 (1975), they would give it the broadest interpretation, arguing that any other conclusion would devoid its purpose. They argue that if such material could be used in lawsuits, review committees would be hesitant to properly investigate the quality and efficiency of medical services rendered as well as the qualifications of staff members and applicants. In short, if the material is discoverable, committee members would be less than candid. Without commenting on the validity of this proposition, it would appear to be a sad commentary on the integrity of the medical profession.

The cases as cited by defendants were all from the lower courts. None are particularly convincing. Schwartz v. Tri-County Hospital, supra, containing general language about the laudatory purpose of the act, actually concerned a situation where discovery was sought concerning defendant's appearance before a medical committee which was reviewing plaintiff's case. A situation in which plaintiff concedes and which obviously is within the protection of the act. Holliday v. Klimoski, 75 D.&C.2d 408 (1976), contains insufficient facts, and it is not clear from the reported decision as to what parties or patient was involved in the committee's review. Bandes v. Klimowski, 3 D.&C.3d 11 (1977), does seem to support defendant's interpretation of the act. The last case, Obenski v. Brooks, 7 D.&C.3d 253 (1978), is again not clear, simply recognizing that discovery

would not be permitted in areas immune by the Peer Review Protection Act.

The plaintiffs' interpretation of the act is supported by Segal v. Roberts, 380 So.2d 1049 (4th Fla.Dist.Ct.App. 1979), in which the court, interpreting a Florida statute substantively similar to our Peer Review Protection Act, held that in a medical-malpractice action against two physicians, but not against the hospital where the operation was performed, certain records from another hospital pertaining to the defendant-physicians were discoverable. The court stated:

"It must be remembered that the cause of action involved in this case is the alleged malpractice of the petitioners Dr. Segal, Dr. Caster, and Surgical Associates, P.A., in caring for Mrs. Roberts during her confinement in Golden Isles Hospital in August 1970. Yet the documentation sought by respondents has to do with records and evaluations made by committees in Hollywood Memorial Hospital during various periods from 1967 through 1972. Obviously, those proceedings and records would not be the subject of evaluation and review of medical treatment which took place in another hospital at another time.

"We recognize the legislative purpose. . .to make privileged the proceedings and records of medical review committees so that they will be free and uninhibited in their proceedings thus facilitating candor and conscientious evaluation which will promote high quality medical and hospital care. However, stripped of unnecessary terminology (for purpose of this analysis) subsection (4) provides that '(t)he proceedings and records of committees. . .shall not be subject to discovery. . .in any civil action against a provider of professional health

services arising out of matters which are the subject of evaluation and review by such committee.' Paraphrased, where the circumstances giving rise to the suit were the very ones considered in the committee evaluation, the documents and transcribed proceedings of the said committee hearings are precluded from discovery. But if the subject matter of the suit and the subject of the medical review committee evaluation are not the same, the statute does not apply. Thus, it is our conclusion that the trial judge was correct in holding the statute does not preclude discovery of the subpoenaed documentation in this case." Id. at 1051-52.

The above interpretation is reasonable in light of the language of our statute and the Pennsylvania attitude toward discovery in general. Defense counsel assume that the purpose of the act is to protect all peer reviews under all circumstances and assert, in effect, that the court should simply forget the "arising out of" language of §425.4. While it is true that the "object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly," 1 Pa.C.S. §1921(a), as stated by the Superior Court in Habecker v. Nationwide Insurance Company, 299 Pa. Super. 463, 471, 445 A.2d 1222, 1226 (1982):

"(t)he Statutory Construction Act disfavors surplusage. This act requires that '(e)very statute shall be construed, if possible to give effect to all its provisions,' 1 Pa.C.S. §1921(a), and permits the presumption that the legislature, 'intends the entire statute to be effective and certain,' 1 Pa.C.S. §1922(2). The legislature is presumed to have intended to avoid mere surplusage in the words, sentences and provisions of its laws. Courts must therefore construe a statute, if possible, so as to give effect to every word. Commonwealth v. Driscoll,

485 Pa. 95, 401 A.2d 312 (1979); Masland v. Bachman, 473 Pa. 280, 291, 374 A.2d 517, 522 (1977); Daly v. Hemphill, 411 Pa. 263, 273, 191 A.2d 835, 842 (1963); Pa. Ind. For Blind and Handicapped v. Larson, 50 Pa. Commw. 95, 411 A.2d 1305 (1980)."

Thus, in the instant case the court cannot ignore the language of §425.4 that limits the privilege to those peer review matters which also gave rise to the civil action. It does not strain the canons of statutory construction to determine from the language of the section that the General Assembly's intent was not to grant an absolute privilege to health care providers. Rather, the legislature intended to balance the competing interests of a litigant's right to evidence relevant to his claim against the need for full and frank discussions during peer review meetings by providing a privilege but limiting that privilege to matters that are the subject of the civil action.

Such an interpretation is also consistent with the Pennsylvania attitude that the rules of discovery should be construed to permit wide discovery. See Pa.R.C.P. 126; McCrary v. Kennedy Memorial Hospital, 1 D.&C.3d 443 (1977); Yoffee v. Golin, 90 Dauph.Co.Rep. 39, 45 D.&C.2d 318 (1968); Miller v. Bethlehem Steel Corp., 56 D.&C.2d 269 (1972). Liberality in making discovery was also cited by the court in Auld v. Holly, 418 So.2d 1020 (4th Fla.Dist.Ct.App. 1982), in interpreting the Florida statute. There, the court, in a physician's defamation action against members of a hospital's credentials committee which had denied him staff privileges, stated:

"In interpreting this provision, we must bear in mind the strong public policy favoring discovery and the ascertainment of truth in legal proceedings.

See Jones v. Seaboard Coast Line Railroad, 297 S.2d 861, 863 (Fla. 2d DCA 1974) (rules are liberally construed in favor of discovery); 19 Fla.Jur.2d Discovery and Depositions, §1 (1980) (rules are liberally construed in favor of discovery); 23 Am.Jur.2d Depositions and Discovery §144 (1965) (statutes and rules are liberally construed in favor of discovery). This policy requires us to narrowly construe statutes, such as the present statute, which prevent parties from discovering why their legitimate interests have been adversely affected. If a statute is susceptible to different but equally tenable constructions, we must adopt the construction which allows discovery. We cannot, without a clear expression of legislative intent, allow a cloak of secrecy to envelop a proceeding that substantially affects a person's legitimate interests." Id. at 1025.

Confronted with this rather clear eliminating language, defendants have argued at some length that this applies only to section three of the act which affords immunity to persons providing information to review committees, 63 P.S. §425.3. A reading of the act shows no connection between the sections nor have defendants flushed out their assertion with any logical explanation of nexus.

It is therefore our holding that the privilege afforded by the Peer Review Proection Act applies only to matters which can reasonably be associated with plaintiffs' cause of action.

With this interpretation, we will now examine in detail the specific matters under consideration.

## A. KIPP v. FITZGERALD

We conclude that, as against defendant physician, the act does not protect any portion of his Harrisburg Hospital personnel file or any questions put to the hospital administrator.

The act would protect only those portions of his Holy Spirit Hospital personnel file containing material generated by peer review committees which dealt with defendant's treatment of plaintiff's decedent giving rise to the malpractice claim. All other portions of the file, including peer reviews of defendant's treatment of other persons and documents generated by any kind of credentials committee that made the decision to grant him staff privileges, would be discoverable. Further, anyother information that made its way into the file by other than peer review committees would not be protected under the act.

### B. BOLTON v. SANDERSON AND HOLY SPIRIT HOSPITAL

The hospital objected to the following two interrogatories:

"(1) Has the Holy Spirit Hospital ever received complaints about the professional conduct or professional standards of defendant Douglas K. Sanderson?

(2) If so, state in detail what corrective action [was taken] or [what] committees have reviewed such complaints?"

The first question does not appear to request information privileged under the act even if the complaints arose in a peer review setting. It asked for a yes or no answer and does not seek the substance of the complaints. The mere existance of complaints is not confidential. See Holiday v. Klimoski, supra. Additionally, the complaints may not have come through peer review committees. As to the second question, if the corrective action was taken outside the peer review setting, then it would be discoverable. If it was taken as a result of peer review, then

that material is not discoverable. This distinction has been carefully followed in other jurisdictions.[2] See Marchand v. Henry Ford Hospital, 398 Mich. 163, 247 N.W.2d 280 (1976) (material voluntarily compiled by a physician and not as a result of a directive from a hospital peer review·committee was discoverable and outside the scope of a statutory privilege protecting information "collected for or by individuals or committees assigned this review function"); Schulz v. Superior Court, 66 Cal. App.3d 440, 136 Cal.Rptr. 67 (1977) ("Section 1157 applies only to records. and proceedings before medical investigative committees. It is conceivable that the records of the hospital administrative staff do not contain reference to proceedings of the medical advisory board and, to that extent, are not within the protection of section 1157"); Matchett v. Superior Court, 40 Cal.App. 3d 623, 115 Cal.Rptr. 317 (1974) ("It is at once apparent that the trial court's order was too sweeping. The medical staff immunity described in section 1157 extends to, first, the proceedings, and second, the records of the described staff committees. It does not embrace the files of the hospital administration (as distinguished from staff)")

Since the Holy Spirit Hospital is defendant in the action and since we do not have a complaint detailing what the allegations are against it, we must give it blanket protection with respect to its peer review activities.

The names of the committees requested in the second question would, of course, be discoverable as the act does not protect such information.

_____

2. Cases dealing with peer review protection acts of various states are collected in Annot., 81 A.L.R. 3d 944 (1977).

The documents whose production is resisted are:

1. Copy of the personnel file relating to Dr. Douglas K. Sanderson.

2. Copies of any notes, correspondence or other communications of any committees or administrative staff who were involved in the supervision of Dr. Douglas K. Sanderson or his activities within Holy Spirit Hospital.

3. Copies of all correspondence, notes or complaints relative to the performance of unnecessary operations by Dr. Douglas K. Sanderson.

The requests for production against the hospital are phrased broadly enough to request material not privileged under the act. Thus, defendant physician's personnel file, except for records generated by any peer review committee, would not be protected. Notes, correspondence or other communications of any committees or administrative staff that were not produced in peer review activity would be discoverable.

Similarly, all corespondence, notes or complaints relative to defendant physician's performance of unnecessary surgery which did not arise solely from peer review could be discoverable, since §425.4 provides that "information, documents or records otherwise available from original sources are not to be construed as immune from discovery . . . merely because they were presented during proceedings of such committee . . . ." Thus, a complaint and accompanying documentation from a dissatisfied patient submitted to the hospital in connection with a complaint against defendant physician is discoverable even though eventually considered by a peer review committee. Only those documents and evidence generated by the committee in response to a complaint would be protected.

We now turn to the deposition questions and will first discuss those which may involve the Peer Review Act.

"1. Doctor, what was [sic] the differences that you had with these other doctors with regard to patient care?

"2. Aside from Dr. Lonergan, has any other physician ever indicated or made any statements that you performed excessive or unnecessary or too much surgery?

"3. Dr. Sanderson, was Dr. Roth ever critical of you and the manner in which you perform surgery?

"4. Dr. Sanderson, was a complaint about your amount of surgery made to the Holy Spirit Hospital?

"5. Without telling me what the substance of any discussions were or any statements, has there been any type of a hearing or other adjudication made by the Holy Spirit Hospital?

"6. Has anyone, other than Dr. Roth, ever made any statements concerning either the amount of your surgery or the necessity for it?

"7. Have your privileges at the Holy Spirit Hospital been restricted or curtailed in any manner whatsoever?

"8. Have you had any discussions with any Administrators of the Holy Spirit Hospital with regard to the surgery that you performed?"

The questions could call for information protected by the act, but do not necessarily do so. Thus, defense counsel should not have instructed his client not to answer those questions. Rather, defense counsel should have qualified the instruction to exclude information defendant knew was generated by a peer review meeting and which pertained to plaintiffs' case. Peer reviews concerning other patients would be discoverable.

The remaining issue relates to two deposition questions put to defendant Sanderson concerning his expert testimony. The first question requested how he would treat wife-plaintiff now based upon his current experience.

While the issue is whether the doctor's conduct was below the standard of care applicable at the time of plaintiff's treatment, this inquiry could well lead to relevant evidence.

"With regard to the Federal Rule that has served as the prototype for the Pennsylvania Rule, it has been held that discovery is not limited to matters of admissible evidence or to issues raised by the pleadings or to the merits of the case, since a variety of fact-oriented issues may arise during the litigation that are not related to the merits; it is sufficient if the matter sought to be discovered is reasonably calculated to lead to the discovery of admissible evidence. And in seeking information 'reasonably calculated to lead to the discovery of admissible evidence,' a party is not limited by the possible existence of other avenues of inquiry." Goodrich-Amram 2d §4003.1:9 (p. 71).

If, for example, the doctor would indicate he would have handled the situation in a different manner, a proper inquiry may well be what had caused him to change his mind and whether such factors were available to him or should have been considered by him at the time of treatment.

Defendant's contention that this would be compelling a doctor in a malpractice action to give expert testimony against himself is without merit. A physician who is a defendant in a medical-malpractice action can be required to give expert testimony. Defendant's reliance on Williams v. South Hills Health System, 24 D.&C.3d 206 (1981), is misplaced. In Williams, the court held that a physician

who had no connection to a case either as a party or as an expert retained by a party could not be compelled to give expert testimony at his deposition. There is an obvious difference between the scope of discovery permitted from a defendant physician and one who is not a party to the action. He can also be compelled to be an expert witness against himself. See 42 Pa.C.S. §5941; City of Philadelphia v. Kenny, 28 Pa. Commw. 531, 369 A.2d 1343 (1977). The only exception occurs when the testimony in the civil action could be used in a subsequent criminal case; see Woods v. Dunlop, 461 Pa. 35, n.11, 334 A.2d 619 n.11 (1975); City of Philadelphia v. Kenny, supra, but defendant makes no such assertion.

Finally, defendant asserts that he cannot be forced to answer the following hypothetical question:

"Assuming that you had had x-rays taken before the procedure and they showed the demineralized condition of her bones, would you have proceeded with the manipulation?"

Defendant asserts that no x-rays were taken; thus, the question is improper because it relies upon facts not of record.[3]

This question is relevant as to defendant's opinion on the proper standard of care that should have been exercised. A malpractice case can turn on defendant's acts of omission as well as of commission.

If plaintiff can produce an expert who will testify to the fact that the proper standard for care requires x-rays before a manipulation of the type performed by defendant, and that these will reveal the mineral

---

3. Plaintiff does not state whether or not x-rays were taken, so if defendant is correct, the question relies upon facts not only not of record but also facts that can never be made part of the record.

content of the bones, then a negative response by defendant physician to the hypothetical would have relevance in establishing both the proper standard of care and that defendant deviated from it.

Accordingly, we enter the following

ORDER

And now, this March 23, 1984, discovery as to the matters raised herein is to proceed consistent with this opinion.