DYE v ST JOHN HOSPITAL AND MEDICAL CENTER

Docket No. 192292. Submitted November 3, 1997, at Detroit. Decided July 10, 1998, at 9:35 A.M. Leave to appeal sought.

    Moira K. Dye brought an action in the Wayne Circuit Court against St. John Hospital and Medical Center, Arturo F. Paz-Esquerre, M.D., also known as Arturo Paz, M.D., and Arturo Paz, M.D., P.C., alleging injury resulting from Dr. Paz' malpractice and that St. John was negligent in extending staff privileges to Dr. Paz. The court, John A. Murphy, J., entered an order requiring St. John to produce certain documents from the credentials file of Dr. Paz that was compiled by the hospital's credentials committee when Dr. Paz sought staff privileges. The Court of Appeals granted St. John leave to appeal from the court's order and stayed the proceedings below.

    The Court of Appeals *held*:

    1. The information sought by the plaintiff is privileged and not subject to court subpoena pursuant to MCL 333.20175(8); MSA 14.15(20175)(8) and MCL 333.21515; MSA 14.15(21515). The statutes protect against disclosure of information relating to Dr. Paz' application for staff privileges.

    2. The materials in the file sought were collected for or by the credentials committee and the confidentiality provisions of subsection 20175(8) and § 21515 apply.

    3. 1967 PA 270 does not generally mandate disclosure of any information by a review entity and does not provide authority in this case for the proposition that disclosure of the credentials file is mandatory. Even if Act 270 could be interpreted as mandating disclosure, disclosure would be required only with respect to information released for one of the purposes found within § 2 of the act, as amended. MCL 333.532; MSA 14.57(22). The subsection of § 2 that the plaintiff alleges requires disclosure of the file, subsection 2(e), refers only to the release of information for the purpose of assisting a health care facility in determining whether a health care professional has the qualifications, competence, and performance needed to be selected and appointed to a medical staff position. Subsection 2(e) has nothing to do with the release of information to a plaintiff in a malpractice or negligent hiring lawsuit. The order

requiring disclosure must be vacated and the matter must be remanded for further proceedings.

Vacated and remanded.

CAVANAGH, J., dissenting, stated that MCL 331.532(e); MSA 14.57(22)(e) clearly provides that records relating to a review entity's decision whether to grant a doctor staff privileges may be released for review of the doctor's qualifications, competence, and performance. In addition, the evaluation of the claim that St. John was negligent in extending staff privileges to Dr. Paz specifically calls for a review of the qualifications, competence, and performance of a health care professional with respect to the selection and appointment of the health care professional to the medical staff of a health facility, making the release of the review entity's records appropriate under subsection 2(e). The court did not err in ordering production of the documents, and the matter should be remanded for further proceedings.

1. HOSPITALS — PHYSICIANS AND SURGEONS — RECORDS — REVIEW ENTITIES.

The Legislature has imposed a comprehensive statutory ban on the disclosure of any information collected by, or records of the proceedings of, committees assigned a professional review function within hospitals and health facilities; materials relating to the provision of staff privileges are not outside the purview of the statutes (MCL 333.20175[8], 333.21515; MSA 14.15[20175][8], 14.15[21515]).

2. HOSPITALS — PHYSICIANS AND SURGEONS — RECORDS — REVIEW ENTITIES.

Materials submitted to a review entity of a hospital or health facility by a doctor or submitted on the doctor's behalf by colleagues, references, and so forth, as part of the review entity's requirements with respect to the materials it seeks to review before granting the doctor staff privileges are "collected for or by" the review entity for purposes of MCL 333.20175(8), 333.21515; MSA 14.15(20175)(8), 14.15(21515).

3. HOSPITALS — PHYSICIANS AND SURGEONS — RECORDS — REVIEW ENTITIES.

Disclosure of information by a review entity of a hospital or health facility generally is not mandated by 1967 PA 270; the act immunizes from liability an entity that chooses to disclose information where the disclosure is for one of the purposes enumerated in MCL 331.532; MSA 14.57(22); the disclosure authorized by subsection 2(e) refers only to the release of information for the purpose of assisting a health care facility in determining whether a health care professional has the qualifications, competence, and performance needed to be selected and appointed to a medical staff position and is not concerned with the release of information to a plaintiff bring-

ing a malpractice or negligent hiring lawsuit against a hospital and a doctor granted staff privileges by the hospital.

*Kepes, Wine & McNeilage, P.C.* (by *Carol A. McNeilage*) (*Donald M. Fulkerson*, of Counsel), for the plaintiff.

*Kitch, Drutchas, Wagner & Kenney, P.C.* (by *Susan Healy Zitterman* and *Terese L. Farhat*), for St. John Hospital and Medical Center.

Before: BANDSTRA P.J., and CAVANAGH and MARKMAN, JJ.

BANDSTRA, P.J. Defendant[1] St. John Hospital and Medical Center appeals by leave granted the trial court's order requiring it to produce certain documents from the credentials file of Dr. Arturo Paz-Esquerre, also known as Dr. Paz. We vacate and remand.

Plaintiff Moira Dye first consulted Dr. Paz with complaints of pain in her head and neck, tinnitus in her left ear, and dizziness. Dr. Paz diagnosed Arnold-Chiari malformation and performed surgery on plaintiff at defendant hospital. Following the surgery, plaintiff began experiencing spasms in the back of her head, decreased sensation in her left foot, persistent numbness in her left leg, and difficulty walking. Plaintiff continues to suffer from a lack of sensation in her left leg and recurrent hydrocephalus and therefore requires additional medical and surgical treatment.

---

[1] Both St. John Hospital and Medical Center and Dr. Arturo Paz-Esquerre are defendants in this lawsuit. However, because the doctor is not a party to this appeal, we will use the term defendant to refer exclusively to St. John Hospital and Medical Center.

Plaintiff filed the present lawsuit against defendant and Dr. Paz. Plaintiff alleged that she had been injured as a result of Dr. Paz' negligent acts. Plaintiff further alleged that defendant had been negligent in extending staff privileges to Dr. Paz. Plaintiff served defendant with a request for the production of a "[c]opy of Dr. Paz's personnel/privileges file including application for staff privileges, recommendations, medical school record, and credentials, etc." Defendant objected to plaintiff's request, contending that the information sought was not subject to discovery under various provisions of the Public Health Code, MCL 333.1101 *et seq.*; MSA 14.15(1101) *et seq.*

Plaintiff filed a motion to compel the production of Dr. Paz' personnel/credentials file. In its response to plaintiff's motion, defendant attached a copy of its bylaws and affidavits of Dr. Frank Wilson, its senior vice president of medical affairs. According to these uncontested documents, Dr. Wilson is in charge of physician credentialing on behalf of defendant's credentials committee, which was established pursuant to the hospital's bylaws "to review the professional practices in the hospital for the purpose[s] of reducing morbidity and mortality, improving the care provided patients in the hospital, and to insure that physicians are granted privileges consistent with their individual training, experience and other qualifications." The functions of the credentials committee include review of the qualifications, competence, and performance of health care professionals seeking to work at defendant hospital. Dr. Paz' credentials file consists of letters of recommendations, peer evaluations, and other information collected by or for the

members of the credentials committee as part of this
review.

At a hearing regarding plaintiff's motion, the trial
court ordered defendant to submit the credentials file
for an in camera review. After that review, the trial
court ordered defendant to produce twenty-four doc-
uments from the file, reasoning only that they were
not "in the category of peer review material."[2] The
documents ordered produced included questionnaires
and reference letters prepared by persons who evalu-
ated Dr. Paz' qualifications, competence, and perform-
ance in relation to his seeking and maintaining staff
privileges with defendant hospital. Defendant's
motions for reconsideration and for a stay of the pro-
duction order were denied by the trial court. Defend-
ant filed an emergency application for leave to
appeal, which this Court granted along with a stay of
the proceedings below.

Whether production of the documents at issue is
barred by statute is a question of law that we review
de novo. See *In re Jagers*, 224 Mich App 359, 362; 568
NW2d 837 (1997). Defendant primarily asserts that
the materials sought by plaintiff are privileged pursu-

---

[2] On the basis of this short explanation, we conclude that the trial court
may have erred in its reasoning. Under the statutory provisions we dis-
cuss more fully below, the relevant question is whether Dr. Paz' person-
nel/credentials file contains information "collected for or by individuals or
committees assigned a professional review function . . . ." MCL
333.20175(8); MSA 14.15(20175)(8). If it does, the statute protects it from
discovery. The statutory purpose, to facilitate the frank exchange of infor-
mation in the important task of overseeing medical personnel and assur-
ing patient care, would be undermined if particular information properly
collected for or by a review entity was later subject to disclosure upon a
determination that, for some unanticipated reason, it was deemed not to
be "in the category of peer review material."

ant to two sections of the Public Health Code.[3] Under MCL 333.20175(8); MSA 14.15(20175)(8),[4] "[t]he records, data, and knowledge collected for or by individuals or committees assigned a professional review function in a health facility or agency are confidential, shall be used only for the purposes provided in this article, are not public records, and are not subject to court subpoena." Similarly, MCL 333.21515; MSA 14.15(21515) provides that "[t]he records, data, and knowledge collected for or by individuals or committees assigned a review function described in this article are confidential and shall be used only for the purposes provided in this article, shall not be public records, and shall not be available for court subpoena."

Defendant contends that the statutory sections quoted above demonstrate that the Legislature has imposed a comprehensive ban on the disclosure of any information collected by, or records of the proceedings of, committees assigned a professional review function within hospitals and health facilities. Therefore, defendant asserts, because the requested materials were collected by or for its credentials committee, which exercises a professional review func-

---

[3] Defendant also relies upon § 3 of 1967 PA 270, as amended, which provides that data collected by or for a review entity under this act are confidential, are not public records, and are not discoverable and shall not be used as evidence in a civil action or administrative proceeding. MCL 331.533; MSA 14.57(23). To the contrary, plaintiff argues that Act 270 requires production of the credentials file. We discuss Act 270 below in relation to plaintiff's argument and agree with defendant that, under the facts of this case, Act 270 is another source of protection against disclosure with respect to the credentials file.

[4] At the time the present case was filed, this section was codified at MCL 333.20175(6); MSA 14.15(20175)(6).

tion,[5] the materials sought by plaintiff are not subject to discovery. The plain meaning of the statutory language would support that conclusion. *McCready v Hoffius*, 222 Mich App 210, 215; 564 NW2d 493 (1997).

Plaintiff advances two arguments why these statutory sections should not apply to the credentials file at issue here. Plaintiff first argues that the statutes apply only to documents gathered for "retrospective" analysis of a past incident or issue raising concerns about medical personnel or hospital procedures. Plaintiff argues that the statutes do not apply to the "prospective" issue addressed by the credentials committee here, whether to extend staff privileges to Dr. Paz. Thus, plaintiff contends the statutes do not provide confidentiality to Dr. Paz' application or the supporting documents within the file at issue.

Plaintiff bases this argument on *Gallagher v Detroit-Macomb Hosp Ass'n*, 171 Mich App 761, 769; 431 NW2d 90 (1988), where a panel of our Court stated that "[i]n determining whether the information . . . is privileged, the court should consider . . . whether the committee's function is that of retrospective review for purposes of improvement and self-analysis and thereby protected, or part of current patient care." The Court in *Gallagher* cited *Monty v Warren Hosp Corp*, 422 Mich 138, 147; 366 NW2d 198

---

[5] The trial court reasoning does not suggest a factual finding that Dr. Wilson and the credentials committee are not "individuals or committees" assigned a review function under the statutory sections at issue here. On the basis of our review of the affidavit submitted by Dr. Wilson and its explanation of the hospital bylaws relating to the credentials committee, we conclude that Dr. Wilson and the credentials committee are within the purview of the statutes. See *Monty v Warren Hosp Corp*, 422 Mich 138, 147; 366 NW2d 198 (1985).

(1985), which similarly stated that "in deciding whether a particular committee was assigned a review function so that information it collected is protected, the court may wish to consider . . . whether the committee's function is one of current patient care or retrospective review. Compare *Davidson v Light*, 79 FRD 137 (D Colo, 1978), with *Bredice v Doctors Hospital, Inc*, 50 FRD 249 (D DC, 1970), aff'd without opinion 156 US App DC 199; 479 F2d 920 (1973)."

Comparing the *Davidson* and *Bredice* precedents, as directed by *Monty*, we reject plaintiff's conclusion that materials relating to the provision of staff privileges are outside the purview of the statutes. The only import of these precedents is that certain "current patient care" issues are so pressing and immediate that the provision of confidentiality is unnecessary to facilitate open discussion by a reviewing committee. In *Davidson*, for example, the plaintiff sought production of an "Infection Control Report" prepared following discovery of an outbreak of gangrene at the defendant hospital:

> The committee involved here does not evaluate hospital policy generally, but presumably is called upon only when an infection problem exists, as was the case here. At such times, the source of an infection is investigated and activity is undertaken to eradicate the infection. This role is not such as to be susceptible to inhibition due to the discoverability of the committee's reports. [*Davison, supra* at 140.]

*Monty* and *Gallagher* might be construed as creating an exception to the statutes' confidentiality provisions for information relating to the investigation and remediation of a specific and immediate health care

crisis.[6] That exception, however, would not apply to the materials gathered by the credentials committee in this case with respect to Dr. Paz' qualifications and the extension of staff privileges.

This conclusion finds support in *Attorney General v Bruce*, 422 Mich 157; 369 NW2d 826 (1985) (hereafter *Bruce)*, a decision handed down by our Supreme Court shortly after *Monty*.[7] The Court in *Bruce* noted that hospitals are required by statute to establish peer review committees and that "[i]ncluded in their duties is the obligation to review the professional practices of licensees, granting staff privileges consistent with each licensee's qualifications." *Id.* at 169. After discussing the rationale for protecting the confidentiality of peer review committees involved in the extension of staff privileges, the Court specifically noted that "[i]n enacting §§ 20175(5) and 21515, the Legislature provided a strong incentive for hospitals to carry out their statutory duties." *Id.* at 169-170. Although arguably dicta, we find this reasoning persuasive; we conclude that the statutes at issue here, the same statutes discussed in *Bruce*,[8] protect against disclosure of information relating to Dr. Paz' application for staff privileges at defendant hospital.

---

[6] Because we conclude that any exception would not apply under the facts of this case, we need not consider whether the language plaintiff relies on from *Monty* and *Gallagher* is dicta or the propriety of grafting an exception onto Michigan statutes on the basis of foreign precedents having nothing to do with those statutes.

[7] Our decision is also consistent with precedents from other jurisdictions. See, e.g., *Memorial Hosp-The Woodlands v McCown*, 927 SW2d 1 (Tex, 1996); *McGee v Bruce Hosp System*, 312 SC 58; 439 SE2d 257 (1993); *Alexander v Superior Court*, 5 Cal 4th 1218; 859 P2d 96 (1993); *Cruger v Love*, 599 So 2d 111 (Fla, 1992).

[8] At the time *Bruce* was decided, the current subsection 20175(8) of the Public Health Code was codified at subsection 20175(5). *Bruce, supra* at 168.

Plaintiff also argues that the statutory sections are inapplicable because materials in the credentials file relating to Dr. Paz' application for employment were not "collected for or by" a review entity. Plaintiff relies upon *Marchand v Henry Ford Hosp*, 398 Mich 163; 247 NW2d 280 (1976). In *Marchand*, the plaintiff sought records compiled by a doctor regarding a "hyperalimentation" feeding technique employed by the defendant hospital. The doctor kept records regarding the feeding technique on his own initiative, for his own education and enlightenment, and not at the request of anyone at the hospital. *Id.* at 167-168. The Supreme Court reasoned that, accordingly, "the information sought by [the plaintiff] was not collected pursuant to a directive from" a review entity under the statute and the fact that the information was subsequently presented at a general hospital staff meeting did not satisfy the "collection" criteria of the statute. *Id.* at 168.

We find *Marchand* to be distinguishable. Plaintiff argues that documents supporting Dr. Paz' original application for staff privileges and the continuing review of those privileges were not "collected for or by" the credentials committee, having been submitted by others. However, Dr. Paz submitted these materials, or had them submitted on his behalf by colleagues, references, and so forth, pursuant to expectations or directives of the credentials committee. As in any situation regarding application for professional employment, Dr. Paz was aware of the requirements of the committee with respect to the credentials, endorsements, and other materials it wanted to review before granting staff privileges. In that sense, materials in the file relating to Dr. Paz' application for

privileges were "collected for or by" the committee and the confidentiality provisions of the statutes apply.

Plaintiff further argues that, notwithstanding the protections afforded to the credentials file by subsection 20175(8) and § 21515 of the Public Health Code, 1967 PA 270 explicitly mandates release of the documents at issue here. MCL 331.531 *et seq.*; MSA 14.57(21) *et seq.* Plaintiff cites § 3 of 1967 PA 270, as amended by 1992 PA 216, which states, in pertinent part, that "[e]xcept as otherwise provided in section 2, the record of a proceeding and the reports, findings, and conclusions of a review entity and data collected by or for a review entity under this act are confidential, are not public records, and are not discoverable and shall not be used as evidence in a civil action or administrative proceeding." MCL 331.533; MSA 14.57(23). Plaintiff argues that one of the provisions of § 2 of Act 270, MCL 331.532; MSA 14.57(22), applies to the credentials file here, a contention we address below, and that therefore § 3 of Act 270 mandates disclosure of that file.[9]

We disagree, first, because Act 270 does not generally mandate disclosure of any information by a review entity. An argument similar to plaintiff's was rejected by our Supreme Court in *Bruce, supra* at 171-172. The Court reasoned that Act 270 "protects persons, organizations, and entities that *choose* to disclose information . . . ." *Id.* at 171-172 (emphasis in original). They are "immunized from liability" as long

---

[9] In effect, plaintiff thus argues that Act 270 overrides the Public Health Code sections discussed above. Because we reject plaintiff's argument that Act 270 mandates disclosure, we also conclude that it presents no conflict with the Public Health Code confidentiality provisions.

as disclosure is for one of the purposes enumerated in § 2 of Act 270. MCL 331.532; MSA 14.57(22). *Id.* at 172. Authorizing and immunizing a disclosure from liability is not, however, the same as mandating disclosure:

> The subpoena indeed may have requested information for permissible purposes [under § 2 of the statute] . . . . Release of such information, however, is clearly discretionary according to MCL 331.531; MSA 14.57(21) which provides that "[a] person, organization or entity *may* provide information." The act does not provide authority for the proposition that disclosure to the department is mandatory. [*Id.* (emphasis in original).]

For the same reason, Act 270 does not provide authority in this case for the proposition that disclosure of the credentials file is mandatory.[10]

Plaintiff's argument also fails for a second reason. Even if, notwithstanding *Bruce*, Act 270 might somehow be interpreted as mandating disclosure, disclosure would only be required with respect to informa-

---

[10] We read *Bruce* as meaning that the entire Act 270 imposes no disclosure obligation but, instead, provides protection from liability for the voluntary release of information. While the Supreme Court considered all three sections of Act 270 in *Bruce*, it came to that conclusion stressing the word "may" in § 1. Application of *Bruce* to this case is, therefore, somewhat problematic. The "may" language in § 1, as amended by 1992 PA 215, has to do with providing information "to a review entity" whereas the question here concerns the release of information by a review committee. Sections 2 and 3 of Act 270 are applicable to that question and they do not have the permissive "may" language. However, we find nothing within §§ 2 or 3 that places a duty on a review entity to release information. Instead, § 3 provides confidentiality protection. That protection is subject to exceptions listed in § 2. Thus, a disclosure falling within one of specified purposes of § 2 does not run afoul of the confidentiality provisions of § 3. Nothing within these sections, however, mandates the release of information within a category excepted from the confidentiality protection. It is one thing to exempt information from guaranteed confidentiality but quite another to require disclosure of that information.

tion released for one of the purposes found within § 2 of the act, as amended. MCL 331.532; MSA 14.57(22). Plaintiff argues that the application for staff privileges and related documents fall within the § 2 provision stating:

> The release or publication of a record of the proceedings or of the reports, findings, and conclusions of a review entity shall be for 1 or more of the following purposes:
>
> \*     \*     \*
>
> (e) To review the qualifications, competence, and performance of a health care professional with respect to the selection and appointment of the health care professional to the medical staff of a health facility. [MCL 331.532(e); MSA 14.57(22)(e).]

We disagree. We conclude, on the basis of the plain and ordinary meaning of this language, that the disclosure authorized is only for the purpose of reviewing the qualifications, competence, and performance of a health care professional during the process of determining whether the health care professional should be selected for and appointed to the medical staff of a health facility. In other words, subsection 2(e) refers only to the release of information for the purpose of assisting a health care facility in determining whether a health care professional has the qualifications, competence, and performance needed to be selected and appointed to a medical staff position. We conclude that it has nothing to do with the release of information to a plaintiff in a malpractice or negligent hiring lawsuit.

We vacate the trial court's order that required the disclosure of documents contained within Dr. Paz'

credentials file.[11] We remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

MARKMAN, J., concurred.

CAVANAGH, J. (*dissenting*). I respectfully dissent. As the majority states, pursuant to MCL 331.533; MSA 14.57(23), the data collected by or for a review entity are confidential, are not public records, and are not discoverable. However, the Legislature has established several exceptions to this general rule. See MCL 331.532; MSA 14.57(22). In particular, MCL 331.532; MSA 14.57(22) provides:

> The release or publication of a record of the proceedings or of the reports, findings, and conclusions of a review entity shall be for 1 or more of the following purposes:
>
> *     *     *
>
> (e) To review the qualifications, competence, and performance of a health care professional with respect to the selection and appointment of the health care professional to the medical staff of a health facility.

The Legislature did not specify to whom the review entity materials could be released; it stated only that release "shall" be for the purposes set forth in the statute.

---

[11] Plaintiff is free to pursue discovery of information contained in the credentials file if it is available from other sources. Our analysis of the statutes at issue here indicates a legislative intent to prohibit litigants from using the files of a review entity like the credentials committee as a "clearinghouse" of information facilitating easy discovery; however, placement of a document within such a file does not protect against its discovery if available from another source.

The majority reads this language to mean that disclosure is authorized only for the purpose of reviewing the qualifications, competence, and performance of a health care professional during the process of determining whether the health care professional should be selected for and appointed to the medical staff of a health facility. Under the majority's construction, the provision allows a review entity that has completed an evaluation of a health care professional to release its records or reports only to itself or another health care facility.

In my view, this restrictive interpretation is not supported by the text of the statute. The statute clearly provides that records relating to a review entity's decision whether to grant a doctor staff privileges may be released for review of the doctor's qualifications, competence, and performance.[1] Judicial construction of a statute is not permitted where the plain and ordinary meaning of the language is clear. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 136; 545 NW2d 642 (1996).

Moreover, the majority ignores the fact that, in addition to her claim of malpractice, plaintiff also alleges that defendant St. John Hospital and Medical Center was negligent in extending staff privileges to Dr. Paz. The evaluation of this claim specifically calls for a review of "the qualifications, competence, and performance of a health care professional with

---

[1] The majority relies on *Attorney General v Bruce*, 422 Mich 157; 369 NW2d 826 (1985), in which the Court noted that "[i]n enacting [MCL 333.20175(5); MSA 14.15(20175)(5) and MCL 333.21515; MSA 14.15(21515)], the Legislature provided a strong incentive for hospitals to carry out their statutory duties." *Id.* at 169-170. However, the Supreme Court decided *Bruce* before the enactment of MCL 331.532(e); MSA 14.57(22)(e) in 1992 PA 215.

respect to the selection and appointment of the health care professional to the medical staff of a health facility." Accordingly, I would conclude that the trial court did not err in ordering defendant to produce documents from Dr. Paz' personnel/credentials file.

The trial court found that approximately half of the documents in Dr. Paz' personnel/credentials file were subject to discovery. However, because the record does not reflect that the trial court considered MCL 331.532; MSA 14.57(22) in making its ruling, I would remand so that the trial court could conduct another in camera review with the provisions of that statute in mind.