ATTORNEY GENERAL v BRUCE

Docket No. 63437. Submitted January 13, 1983, at Lansing.—Decided
    April 18, 1983.

    The Department of Licensing and Regulation began conducting
        an investigation of Dr. Weldon J. Cooke, a staff physician at
        Berrien General Hospital, after being informed that the hospi-
        tal's peer review committee had suspended Dr. Cooke's staff
        privileges for a period of six months following an internal
        investigation involving the death of one of Dr. Cooke's patients.
        The department requested the hospital to supply it with infor-
        mation utilized by it in conducting its internal investigation.
        The hospital refused, claiming that the information was privi-
        leged. The Attorney General, acting on behalf of the depart-
        ment, petitioned the Ingham Circuit Court for the issuance of
        an investigative subpoena requiring Sandra G. Bruce, the Chief
        Executive Officer of Berrien General Hospital, and the hospital
        itself to release all information concerning the investigation of
        Dr. Cooke. The court, Jack W. Warren, J., granted the petition
        and subsequently denied the hospital's motion to quash the
        subpoena. Sandra Bruce and the hospital appeal. *Held:*

        The decision of the circuit court is reversed. The hospital
        cannot be required to identify the records its peer review
        committee utilized nor can it be required to make available the
        records, data and knowledge it prepared during the course of
        its investigation.

        Reversed.

1. STATUTES — JUDICIAL CONSTRUCTION.

    Judicial construction or interpretation which would vary the
        plain meaning of a statute is prohibited where the statutory
        language is clear and unambiguous.

2. HOSPITALS — INTERNAL INVESTIGATIONS — RECORDS — PEER RE-
    VIEW COMMITTEE.

    A hospital cannot be required to identify the records its peer

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes § 206.
[2] [No reference]

review committee utilized during an internal investigation of a staff physician nor can it be required to make available the records, data and knowledge it prepared during the course of its investigation (MCL 333.20175[5]; MSA 14.15[20175][5]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Thomas L. Sparks,* Assistant Attorney General, for petitioner.

*Best, Arnold, Gleeson & Best, P.C.* (by *Anne L. Heyns),* for appellants.

Before: D. E. HOLBROOK, JR., P.J., and CYNAR and H. W. MOES,* JJ.

H. W. MOES, J. Defendants appeal as of right from an order of the Ingham County Circuit Court granting plaintiff's request for an investigative subpoena and denying defendants' motion to quash the same.

On December 14, 1981, defendant Berrien General Hospital (hospital) notified the Michigan Board of Medicine (board) that it had completed an internal investigation concerning a patient incident involving Dr. Weldon Cooke, a physician with staff privileges at the hospital. The incident involved the death of a patient which occurred on November 7, 1981. After completing its investigation, the hospital's peer review committee made the following findings:

"Dr. Cooke has demonstrated a pattern of clinical practice and professional conduct within the hospital setting which fails to meet standards acceptable for the present exercise of clinical privileges and staff activity at Berrien General Hospital. Areas of deficiency or inappropriate performance by Dr. Cooke were determined to be as follows:

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"1. Preventable technical error in performance of surgical procedures.

"2. Physician neglect of patients.

"3. Judgmental error in patient management.

"4. Avoidable post-operative complications.

"5. Unprofessional behavior within the hospital setting."

As a result of the review committee's findings, the Executive Committee of the hospital suspended Dr. Cooke's staff privileges for a period of six months.

After receiving the hospital's notification letter, the Department of Licensing and Regulation (department) began conducting its own investigation of Dr. Cooke. In connection with that investigation, the department requested the hospital to supply it with information utilized by it in conducting its internal investigation. The hospital refused, claiming that the information was privileged. The Attorney General, acting on behalf of the department, then petitioned the Ingham County Circuit Court for the issuance of an investigative subpoena requiring the hospital to release the following:

"Any and all information in the custody or control of Berrien General Hospital, Berrien Center, Michigan, arising from a corrective action investigation of a patient incident involving Weldon J. Cooke, M.D., license #20597, resulting in the death of a patient on November 7, 1981, including reports, incident reports and testimony compiled by or on behalf of Berrien General Hospital; and any and all orders of Berrien General Hospital, its agents or committees, and any responses or notices filed by Weldon J. Cooke, M.D."

The court granted the petition and subsequently

denied the hospital's motion to quash the sub-poena.

The Attorney General claims that the department was entitled to the release of the information pursuant to Article 15 of the Michigan Public Health Code (code), MCL 333.16101; MSA 14.15(16101) through MCL 333.18838; MSA 14.15(18838), which provides in part:

"A board may request and receive the following reports and shall evaluate the reports, determine whether grounds for disciplinary action exist, and apply appropriate sanctions:

"(a) Information from a licensed health care facility as to disciplinary action taken by it which results in the change of employment status or privileges of practice of a licensee, and a summary of the information pertinent to the change, where the action is related to the safety and competence of practice.

\*   \*   \*

"(d) Reports from any other appropriate source necessary for determination of the competency and safety of the practice of a licensee. Appropriate sources include appointed public and private professional review entities and public and private health insurance programs." MCL 333.16243; MSA 14.15(16243).

The authority of the Attorney General to sub-poena information on behalf of the department is provided for in MCL 333.16235; MSA 14.15(16235):

"(1) Upon application by the attorney general or a party to a contested case, the circuit court may issue a subpoena requiring a person to appear before a hearings examiner in a contested case or before the department in an investigation and be examined with reference to a matter within the scope of that contested case or investigation and to produce books, papers, or documents pertaining to that contested case, or investigation."

The Attorney General claims that these two provisions read together provide express statutory authorization for the release of this information. We disagree.

The duty of a hospital to provide for internal review of the professional practices of physicians granted staff privileges is created by Article 17 of the Code. MCL 333.20101; MSA 14.15(20101) through MCL 333.22181; MSA 14.15(22181). In particular, MCL 333.21513; MSA 14.15(21513) provides:

"The owner, operator, and governing body of a hospital licensed under this article:

\* \* \*

"(d) Shall assure that physicians admitted to practice in the hospital are organized into a medical staff to enable an effective review of the professional practices in the hospital for the purpose of reducing morbidity and mortality and improving the care provided in the hospital for patients. This review shall include the quality and necessity of the care provided and the preventability of complications and deaths occurring in the hospital."

That provision is immediately followed by MCL 333.21515; MSA 14.15(21515), which provides:

"The records, data, and knowledge collected for or by individuals or committees assigned a review function described in this article are confidential and shall be used only for the purposes provided in this article, shall not be public records, and shall not be available for court subpoena."

The Attorney General complains that the above-quoted language was intended only to protect the confidentiality of peer review committee actions from discovery in circuit court proceedings (i.e.,

malpractice actions). It claims that it was not intended to preclude the department from gaining access to this type of information in the context of license review investigations. The difficulty with the Attorney General's argument is that, as noted above, investigations conducted by the department are authorized by Article 15 of the code. Internal peer review activities are required by Article 17. The statutory provision quoted above expressly provides that records, data and knowledge collected by the peer review committee shall be used only for purposes of Article 17 proceedings. The language of the statute is unambiguous. It is well-established that where the statutory language is clear and unambiguous, judicial construction or interpretation which would vary the plain meaning of the statute is prohibited. *Lawrence v Dep't of Corrections,* 88 Mich App 167, 171; 276 NW2d 554 (1979).

The Attorney General argues that the statute is rendered ambiguous by virtue of another provision contained within Article 17. MCL 333.20175; MSA 14.15(20175) requires hospitals to notify the department of disciplinary action which has been taken against a member of the medical staff of the hospital and the relevant circumstances for such action. He claims that the Legislature's use of the phrase "relevant circumstances" evinces a legislative intent to permit the department to obtain the information in question. The Attorney General's argument is belied by another provision of § 20175 which immediately follows the provision discussed above:

"(5) The records, data, and knowledge collected for or by individuals or committees assigned a professional review function in a health facility or agency are confidential, shall be used only for the purposes provided in

this article, are not public records, and are not subject to court subpoena."

It is clear from the foregoing that the provision upon which the Attorney General relies does not defeat the privilege created by § 21515. It merely requires the hospital to explain, in general terms, the reasons for its actions. Had the Legislature intended to provide that information collected by hospital peer review committees be made available for departmental investigations, it would have expressly so provided as it did in § 16244, MCL 333.16244; MSA 14.15(16244), which provides that the physician/patient privilege does not apply with respect to such investigatory proceedings. Since it has failed to do so, the Attorney General's claim must be rejected.

The Attorney General finally claims that to interpret the statute in the manner suggested by the hospital will defeat the intent of the Legislature in enacting Article 15 of the Public Health Code. It argues that the information collected by the hospital peer review committee is essential to departmental investigations into the qualifications of licensed health care professionals. We cannot agree.

Article 15 of the code creates a duty on behalf of the board and the department to investigate activities related to the licensee's practice. MCL 333.16221; MSA 14.15(16221); MCL 333.16231; MSA 14.15(16231). The duty of a hospital peer review committee to investigate a licensee's activities only exists as it relates to the licensee's privilege to retain staff privileges at that particular hospital. MCL 333.21513; MSA 14.15(21513). It is readily apparent that the statutory privilege created with respect to peer review committee com-

munications was intended to encourage those committees to conduct their proceedings in a frank and professional manner. By insuring that the proceedings remain confidential, the Legislature has provided strong incentive for hospitals to carry out their statutory duties in a meaningful fashion. In the absence of such protection, associates of those physicians being investigated by the hospital might prove to be much more reluctant to evaluate their colleagues' skills in an objective fashion. In the face of such reluctance, it is entirely conceiveable that the information which is now produced as a result of the committee investigations, information which the department claims to be so necessary to its own investigations, might not exist at all. If that were the case, not only would the information be unavailable to the department, it would also be unavailable to the hospital and the protections of Article 17 would essentially be rendered meaningless. See Anno: *Discovery of Hospital's Internal Records or Communications As to Qualifications or Evaluations of Individual Physician,* 81 ALR3d 944.

In our opinion, by providing that peer review committee proceedings remain confidential, the Legislature has not provided an impediment to departmental investigations. On the contrary, the department may interview hospital employees and staff members and obtain patient records so that its investigation may be conducted in much the same manner as is the investigation carried out by the hospitals' peer review committees. If staff members prove to be reluctant to testify concerning their knowledge of the licensee's conduct, the Attorney General may obtain a court order requiring cooperation. MCL 333.16235; MSA 14.15(16235). Therefore, rather than inhibiting the ability of the department to carry out its investiga-

tive functions, the statutory provision in question merely requires the department to conduct its own investigations, rather than to expect the hospital to carry out those duties for it.

The foregoing is not meant to suggest that a hospital may avoid disclosure of records which would otherwise be available to the department merely by utilizing those records in conducting its own internal investigation. A hospital is required to release to the department records of the patient's treatment, nurse's notes, and other requested records which are kept in the ordinary course of the hospital's operation. See *e.g., Serafin v Peoples Community Hospital Authority,* 67 Mich App 560, 567; 242 NW2d 438 (1976). Furthermore, where disciplinary action is taken by the hospital against the licensee being investigated by the department, the hospital can be required to disclose, *inter alia,* the date of the incident which led to the disciplinary action and the name of the patient involved. However, the hospital may not be required to identify the records its peer review committee utilized nor can it be required to make available the records, data and knowledge it prepared during the course of its investigation.

The decison of the circuit court is reversed. No costs, interpretation of a statute being involved.