ATTORNEY GENERAL v BRUCE

Docket No. 71645. Argued January 9, 1985 (Calendar No. 16).—Decided June 25, 1985.

    The Attorney General, on behalf of the Department of Licensing and Regulation, petitioned the Ingham Circuit Court for an investigative subpoena requiring Sandra G. Bruce, chief executive officer of Berrien General Hospital, and the hospital to release information regarding an internal peer review of Weldon J. Cooke, M.D., a staff physician, following the death of one of his patients. The department had requested the records as part of an independent investigation of the matter undertaken on behalf of the Board of Medicine following notification of the board by the hospital of the peer review and the suspension of Dr. Cooke's staff privileges. The hospital had refused to submit the peer review records on the ground that the information they contained was privileged. The court, Ray C. Hotchkiss, J., granted the plaintiff's petition, and Jack W. Warren, J., denied the defendant's motion to quash the subpoena, holding that the information and records sought were not privileged or confidential with respect to the department and the board. The Court of Appeals, D. E. HOLBROOK, JR., P.J., and CYNAR and MOES, JJ., reversed (Docket No. 63437). The plaintiff appeals.

    In an opinion by Justice RILEY, joined by Chief Justice WILLIAMS and Justices LEVIN, RYAN, BRICKLEY, and CAVANAGH, the Supreme Court *held:*

    Hospital peer review committee records are confidential and are protected under the Public Health Code from discovery by the Board of Medicine and the Department of Licensing and Regulation.

    1. Hospitals must review the professional practices and procedures of physicians granted staff privileges for the purposes of improving the quality of patient care and reducing patient

REFERENCES FOR POINTS IN HEADNOTES

[1-5] 39 Am Jur 2d, Health § 44.

66 Am Jur 2d, Records and Recording Laws § 12 *et seq.*

Discovery of hospital's internal records or communications as to qualifications or evaluations of individual physician. 81 ALR3d 944.

morbidity and mortality. Confidentiality is essential to the effective functioning of such review, and thus the records of peer review proceedings are not public records, nor are they discoverable by the board.

2. The authority of the board to request and receive reports of disciplinary action taken by a hospital with respect to a staff physician does not extend to reports of peer review proceedings. The section of the code providing for peer review expressly limits the use of reports of peer review proceedings in plain and unambiguous language. The provision in the predecessor to the present code allowed use of peer review committee records "for purposes provided in this act," while the present code allows use of such records "only for purposes provided in this article." In addition, the predecessor act exempted reports to the licensing board from the proscription against being "available for court subpoena." Had the term "court subpoena" as previously used applied only to a subpoena in a civil matter, there would have been no reason to exempt internal reporting under the enforcement provision of civil subpoenas and subpoenas by the board which must be obtained from a court. Thus the substitution of language in the present code, together with the elimination of the exception, is a clear expression by the Legislature that peer review committee records are not discoverable by the board in investigations under article 15 of the code.

3. The preclusion of the board from access to peer review information in conducting independent investigations does not defeat the intent of the Legislature in authorizing the investigation of hospitals by the board. Hospital employees and staff members who have personal knowledge of the activities under investigation may be interviewed by the board and patient records may be obtained, rendering peer review records nonessential to the investigation. The fact that a hospital may choose to disclose peer review information in some cases does not provide authority for the proposition that such disclosure is mandatory.

Affirmed.

Justice BOYLE, dissenting, stated that articles 15 and 17 of the Public Health Code are complementary and must be construed together to give each effect. So construed, it is clear that the articles provide for regulation of health care licensees and that to facilitate such regulation, peer review materials were intended to be available to the licensing board.

The Department of Licensing and Regulation and the Board of Medicine are the only entities in the state having the authority to investigate, regulate, and impose sanctions such as

license revocation, suspension, or limitation on individual medical professionals. To permit a hospital to unilaterally determine what information is relevant when an investigation of an individual licensee is called for under article 15 would frustrate the purposes of the Public Health Code to protect and promote the public health and to regulate occupations, facilities, and agencies affecting the public health. The provision in article 17 that peer review materials shall not be available for court subpoena does not refer to an investigative subpoena in aid of a contemplated administrative proceeding. It is more likely that the provision was intended to preclude discovery of such materials or their use as evidence in private personal injury actions.

The legitimate public interest in encouraging participation in peer review does not require that the confidentiality surrounding such review be absolute. By allowing the Board of Medicine access to peer review files involving physician discipline maintained by a hospital for use in an investigation of a physician for violations specified in the Health Code the Legislature struck a balance with the greater public interest in protecting the health care consumer from unsafe and incompetent licensees.

124 Mich App 796; 335 NW2d 697 (1983).

OPINION OF THE COURT

1. HOSPITALS — INTERNAL INVESTIGATIONS — PEER REVIEW RECORDS — DISCOVERY.
   Hospital peer review committee records are confidential and are protected under the Public Health Code from discovery by the Board of Medicine and the Department of Licensing and Regulation (MCL 333.20175[5], 333.21515; MSA 14.15[20175][5], 14.15[21515]).

2. HOSPITALS — INTERNAL INVESTIGATIONS — PEER REVIEW RECORDS — DISCOVERY.
   In order to improve the quality of patient care and reduce patient morbidity, hospitals are required to review the professional practices and procedures of physicians granted staff privileges; essential to the effective functioning of such review is confidentiality, and thus records of peer review proceedings are not public records and are not subject to discovery by the Board of Medicine (MCL 333.20175[5], 333.21513, 333.21515; MSA 14.15[20175][5], 14.15[21513], 14.15[21515]).

3. HOSPITALS — INTERNAL INVESTIGATIONS — PEER REVIEW RECORDS — DISCOVERY.
   The authority of the Board of Medicine to require production by

hospitals of reports of disciplinary action taken against staff physicians does not extend to reports of peer review proceedings with respect to such physicians; the provision in the Public Health Code for peer review expressly limits the use of reports of peer review proceedings, precluding discovery of the reports by the board (MCL 333.16243, 333.21515; MSA 14.15[16243], 14.15[21515]).

DISSENTING OPINION BY BOYLE, J.

4. HOSPITALS — INTERNAL INVESTIGATIONS — PEER REVIEW RECORDS — DISCOVERY.

Articles 15 and 17 of the Public Health Code are complementary and must be construed together to give each effect; so construed, they reveal a design to provide for regulation of health care licensees and contemplate that hospital records of peer review of such licensees be available to the licensing board (MCL 333.16101 et seq., 333.20101 et seq.; MSA 14.15[16101] et seq., 14.15[20101] et seq.).

5. HOSPITALS — INTERNAL INVESTIGATIONS — PEER REVIEW RECORDS — DISCOVERY.

The provision in article 17 of the Public Health Code that records of peer review of health care licensees shall not be available for court subpoena does not refer to an investigative subpoena in aid of a contemplated administrative proceeding; the provision was more likely intended to preclude discovery of such records or their use as evidence in private personal injury actions (MCL 333.16235, 333.21515; MSA 14.15[16235], 14.15[21515]).

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *Thomas L. Sparks*, Assistant Attorney General, for the plaintiff.

*Best, Arnold, Gleeson, Best & Schmucker, P.C.* (by *Anne L. Heyns*), for the defendants.

Amici Curiae:

*Honigman, Miller, Schwartz & Cohn* (by *Stuart M. Lockman* and *Joseph G. Nuyen, Jr.*) for Michigan Hospital Association.

*Kerr, Russell & Weber* (by *A. Stewart Kerr* and

*Louis G. Corey*) for Michigan State Medical Society.

RILEY, J. This case requires us to decide if records requested by the Michigan Board of Medicine, and ordered by investigative subpoena to be produced, are privileged or confidential with respect to an investigation by the board, although the documents are not public records nor subject to court subpoena for any other purposes.

The Court of Appeals reversed the judgment of the Ingham Circuit Court, holding that defendant hospital's peer review committee proceedings were confidential and could not be subpoenaed by the Board of Medicine. 124 Mich App 796; 335 NW2d 697 (1983).

We affirm.

## INTRODUCTION

The Public Health Code, MCL 333.1101 *et seq.;* MSA 14.15(1101) *et seq.,* imposes upon Michigan hospitals the duty to review their professional practices and procedures for the purpose of improving the quality of patient care and reducing patient morbidity and mortality.

To encourage and implement productive peer review procedures, the Legislature has provided that the information and records developed and compiled by peer review committees be confidential and not subject to court subpoena. MCL 333.20175(5); MSA 14.15(20175)(5), and MCL 333.21515; MSA 14.15(21515).

## PROCEDURAL HISTORY

In accordance with this legislation, and pursu-

ant to the specific requirements of § 20175(4),[1] on December 14, 1981, defendant Berrien General Hospital notified the Board of Medicine that it had completed an internal investigation of a staff physician, Dr. Weldon Cooke. The impetus for this investigation was the death of a patient on November 7, 1981. As a result of the investigation, Dr. Cooke's staff privileges were suspended for six months.

After receiving the hospital's notification letter,[2] the Department of Licensing and Regulation, on behalf of the board, began its own independent investigation, requesting the hospital to submit the information it had obtained during the course of its internal investigation. The hospital refused, claiming that the information was privileged. On behalf of the department, the Attorney General petitioned the Ingham Circuit Court for the issuance of an investigative subpoena,[3] claiming that the department was entitled to the information

---

[1] MCL 333.20175(4); MSA 14.15(20175)(4).

[2] The hospital's peer review committee made the following finding:

" . . . Dr. Cooke has demonstrated a pattern of clinical practice and professional conduct within the hospital setting which fails to meet standards acceptable for the present exercise of clinical privileges and staff activity at Berrien General Hospital. Areas of deficiency or inappropriate performance by Dr. Cooke were determined to be as follow:

"1. Preventable technical error in performance of surgical procedures.

"2. Physician neglect of patients.

"3. Judgmental error in patient management.

"4. Avoidable post-operative complications.

"5. Unprofessional behavior within the hospital setting."

[3] The subpoena requested:

"Any and all information in the custody or control of Berrien General Hospital, Berrien Center, Michigan, arising from a corrective action investigation of a patient incident involving Weldon J. Cooke, M.D., license #20597, resulting in the death of a patient on November 7, 1981, including reports, incident reports and testimony compiled by or on behalf of Berrien General Hospital; and any and all orders of Berrien General Hospital, its agents or committees, and any responses or notices filed by Weldon J. Cooke, M.D."

pursuant to article 15 of the Public Health Code, MCL 333.16101; MSA 14.15(16101), through MCL 333.18838; MSA 14.15(18838), and citing the following pertinent provisions:

> A board may request and receive the following reports and shall evaluate the reports, determine whether grounds for disciplinary action exists, and apply appropriate sanctions:
>
> (a) Information from a licensed health care facility as to disciplinary action taken by it which results in the change of employment status or privileges of practice of a licensee, and a summary of the information pertinent to the change, where the action is related to the safety and competence of practice.
>
> *   *   *
>
> (d) Reports from any other appropriate source necessary for determination of the competency and safety of the practice of a licensee. Appropriate sources include appointed public and private professional review entities and public and private health insurance programs. [MCL 333.16243; MSA 14.15(16243).]

The authority of the Attorney General to subpoena information on behalf of the department is provided for in MCL 333.16235; MSA 14.15(16235):

> (1) Upon application by the attorney general or a party to a contested case, the circuit court may issue a subpoena requiring a person to appear before a hearing examiner in a contested case or before the department in an investigation and be examined with reference to a matter within the scope of that contested case or investigation and to produce books, papers, or documents pertaining to that contested case, or investigation.

The Attorney General claims that these two provisions read together provide express statutory

authorization for the release of this information. We do not agree.

ANALYSIS

The duty of a hospital to provide for internal review of the professional practices of physicians granted staff privileges is created by article 17 of the code. MCL 333.20101; MSA 14.15(20101), through MCL 333.22181; MSA 14.15(22181). In particular, MCL 333.21513; MSA 14.15(21513) provides:

> The owner, operator, and governing body of a hospital licensed under this article:
>
> *   *   *
>
> (d) Shall assure that physicians admitted to practice in the hospital are organized into a medical staff to enable an effective review of the professional practices in the hospital for the purpose of reducing morbidity and mortality and improving the care provided in the hospital for patients. This review shall include the quality and necessity of the care provided and the preventability of complications and deaths occurring in the hospital.

That provision is immediately followed by MCL 333.21515; MSA 14.15(21515), which provides:

> The records, data, and knowledge collected for or by individuals or committees assigned a review function described in this article are confidential and shall be used only for the purposes provided in this article, shall not be public records, and shall not be available for court subpoena.

The Attorney General argues that the above-quoted language was intended only to protect the confidentiality of peer review proceedings from discovery in circuit court proceedings (*i.e.,* mal-

practice actions); that these provisions were not intended to preclude the department from gaining access to this type of information in the context of license review investigations. Noting that the pertinent code provisions were enacted within a thirty-day period, and referring to the general rule that statutes *in pari materia* must be construed together,[4] the Attorney General urges that the section providing confidentiality to peer review committee records must be read in light of the board's authority to investigate.

The problem with this argument is that department investigations are conducted pursuant to article 15 of the code. Internal peer review activities are required by article 17. MCL 333.21513; MSA 14.15(21513). MCL 333.21515; MSA 14.15(21515) expressly provides that the records, data, and knowledge collected by the peer review committee "shall be used only for the purposes provided in this article."[5] This language is unambiguous. Where the statutory language is plain and unambiguous, judicial construction or interpretation which would distort the plain meaning is precluded. *Jones v Grand Ledge Public Schools,* 349 Mich 1, 9-10; 84 NW2d 327 (1957).

We are persuaded that the Legislature's intention that peer review committee records not be discoverable by the board in connection with an

[4] *Reed v Secretary of State,* 327 Mich 108; 41 NW2d 491 (1950).

[5] *Cf.* the language of the Maryland statute:

"The proceedings, records, and files of a medical review committee are neither discoverable nor admissible into evidence in *any civil action* arising out of matters which are being reviewed and evaluated by the committee." (Emphasis added.) *Unnamed Physician v Comm on Medical Discipline,* 285 Md 1, 4; 400 A2d 396 (1979), *cert den* 444 US 868 (1979).

The Maryland Court of Appeals held that a proceeding before the commission is not a civil action, and thus the proceedings, records, and files of the medical review committee were not statutorily protected from discovery by the commission.

article 15 investigation is evident on examination of the statute from which § 21515 evolved. Section 12 of 1968 PA 17, as amended, MCL 331.411 *et seq.;* MSA 14.1179(1) *et seq.,* provided:

> (2) All records, data and knowledge collected for or by individuals or committees assigned this review function after the certification by the director are confidential and shall be used only for the purposes provided *in this act,* shall not be public records and shall not be available for court subpoena. [Emphasis added.]

The foregoing provision was subsequently amended by 1975 PA 111, MCL 331.422; MSA 14.1179(12), to read:

> (2) All records, data and knowledge collected for or by individuals or committees assigned this review function are confidential and shall be used only for the purposes provided *in this act,* shall not be public records and *shall not be available for court subpoena, except as provided in subsection (4).*
>
> * * *
>
> (4) A hospital shall report to the appropriate medical licensing board within 30 days the name of a person and the relevant circumstances causing any of the following:
> (a) The resignation of the person from the medical staff.
> (b) The removal or suspension of a person from the medical staff.
> (c) Any other disciplinary action relating to professional practice taken against a member of the medical staff. [Emphasis added.]

The current provision reads:

> The records, data, and knowledge collected for

or by individuals or committees assigned a review function described in this article are confidential and shall be used only for the purposes provided *in this article*, shall not be public records, and *shall not be available for court subpoena.* [MCL 333.21515; MSA 14.15(21515). Emphasis added.]

Two significant changes are obvious. First, while the predecessors to MCL 333.21515; MSA 14.15(21515) provided that peer review committee records could be used "for the purposes provided *in this act,*" § 21515 allows their use "only for the purposes provided in this article."

Second, in 1975 PA 111, MCL 331.422; MSA 14.1179(12), the immediate forerunner of § 21515, the Legislature saw fit to make an exception to the "not available for court subpoena" rule for reports to the licensing board. It follows, therefore, that if "court subpoenas," as then used, was meant to mean a subpoena only in a civil matter, there would then be no reason to exempt internal reporting under the enforcement provision of civil subpoenas, and subpoenas by the board which must be obtained from a court. Failing this conclusion, there would have been no reason to make an exception to the "not available for court subpoena" rule.

We conclude, therefore, that substitution of the language "in this article" (article 17) for "in this act," together with the elimination of the exception which appeared in § 12(4) of 1975 PA 111, is a clear expression of the Legislature's intent that peer review committee records not be discoverable by the board in an article 15 investigation.

The Attorney General next relies on another provision of article 17. MCL 333.20175(4); MSA 14.15(20175)(4) requires hospitals to "report to the appropriate licensing board and to the department

not more than 30 days after any disciplinary action has been taken against a member of the medical staff, and the relevant circumstances, for any of the grounds set forth in section 16221." He claims that the hospital's duty to report the "relevant circumstances" of disciplinary actions indicates a legislative intent to allow the board to obtain the records requested. The Attorney General suggests that this provision defeats the privilege created by § 21515.

This argument is undermined by MCL 333.20175(5); MSA 14.15(20175)(5) which immediately follows the provision discussed above:

> (5) The records, data, and knowledge collected for or by individuals or committees assigned a professional review function in a health facility or agency are confidential, shall be used only for the purposes provided in this article, are not public records, and are not subject to court subpoena.

The Legislature's inclusion of the foregoing provision, immediately following the provision which requires a report to the board, suggests to us that the report will be of a more narrow scope than is urged by the Attorney General. We believe that the language requiring the hospital to report "relevant circumstances" contemplates an explanation, in general terms, of the reasons for the hospital's actions, which could serve as a basis for the board's own investigation.[6] Had the Legislature intended that hospital peer review committee information be available for departmental investigations, it would have expressly so provided as it did in MCL 333.16244; MSA 14.15(16244), which pro-

---

[6] Although the hospital's initial notification letter to the board (see n 2) was arguably deficient in that it did not even specify the patient's name which prompted the hospital's disciplinary action, that information and the patient's medical records were eventually communicated to the board.

vides that the physician-patient privilege does not apply with respect to such investigations.

We also reject the Attorney General's argument that to deny the board access to peer review information for use in conducting its investigation defeats the Legislature's intent in enacting article 15 of the code. He argues that the requested information is essential to departmental investigations into the qualifications of licensed health care professionals.

Here, again, we cannot agree. Hospitals are required to establish peer review committees whose purposes are to reduce morbidity and mortality and to ensure quality of care. MCL 333.21513; MSA 14.15(21513). Included in their duties is the obligation to review the professional practices of licensees, granting staff privileges consistent with each licensee's qualifications. MCL 333.21513(c); MSA 14.15(21513)(c).

The rationale for protecting the confidentiality of the records, data, and knowledge of such committees was set forth in an oft-quoted opinion of the United States District Court for the District of Columbia:

> Confidentiality is essential to effective functioning of these staff meetings; and these meetings are essential to the continued improvement in the care and treatment of patients. Candid and conscientious evaluation of clinical practices is a *sine qua non* of adequate hospital care. To subject the discussions and deliberations to the discovery process, without a showing of exceptional necessity, would result in terminating such deliberations. [Emphasis in original. *Bredice v Doctors Hospital, Inc,* 50 FRD 249, 250 (D DC, 1970), *aff'd without opinion* 156 US App DC 199; 479 F2d 920 (1973).]

In enacting §§ 20175(5) and 21515, the Legisla-

ture provided a strong incentive for hospitals to carry out their statutory duties.[7]

We do not deny that there exists a strong public interest underlying article 15, *i.e.,* ensuring the competency of state licensees. In recognition of the board's/department's broad responsibilities, the Legislature has authorized the department to investigate the activities of licensees. MCL 333.16221, 333.16233; MSA 14.15(16221), 14.15(16233). The department may interview hospital employees and staff members who have personal knowledge of the activities under investigation and may obtain patient records.[8] The Attorney General is empowered to obtain a court order requiring such testimony and production of such records. MCL 333.16235; MSA 14.15(16235). It is precisely this broad authority given the department to conduct investigations that belies the Attorney General's argument that peer review committee records are essential to departmental investigations. To the contrary, the Legislature has enabled the department to utilize much the same information in its investigation as was available to the hospital's peer review committee.

---

[7] A commentary on the Public Health Code (Strichartz, *Commentary on the Michigan Public Health Code,* U of Mich Press, 1982), written by the Executive Director of the Public Health Statute Revision Project, recognizes the importance of confidentiality to effective functioning of peer review committees. The commentary on § 20175 provides:

"For professional review organizations the additional protection from disclosure even under a court order of the 'records, data and knowledge collected for or by committees assigned' this [peer review] function strengthens their ability to perform their role." *Id.* at 717.

The commentary on § 21515 provides:

"To make the review function effective, the records, data, and knowledge collected by those assigned this task are made confidential. A general provision of similar tone is found in § 20175(5)." *Id.* at 790.

[8] At oral argument, counsel for the hospital noted that the board's investigator interviewed various hospital members, obtained the medical records of the patients involved and was given access to the laparoscopic instrument.

The Attorney General's final argument, which was not raised in either the circuit court or the Court of Appeals, is premised on 1967 PA 270, as amended, MCL 331.531 *et seq.;* MSA 14.57(21) *et seq.*[9] He claims that this act provides authority for the argument that the hospital must comply with the investigative subpoena. We disagree.

This statute protects persons, organizations, and

[9] MCL 331.531; MSA 14.57(21).

"A person, organization, or entity may provide information or data relating to the physical or psychological condition of any person, or the necessity, appropriateness, or the quality of health care rendered to any person, to any review entity. Review entity means a duly appointed peer review committee of the state, of a state or county association of health care professionals, of an officially constituted health care facility, or of a health care association; a professional standards review organization qualified under federal or state law; a foundation or organization acting pursuant to the approval of a state or county association of health care professionals; or a state department or agency whose jurisdiction encompasses such information. Liability of any kind shall not arise or be enforced against any person, organization, or entity by reason of having provided such information or data; by reason of any act or communication within its scope as a review entity; or by reason of having released or published the proceedings, reports, findings, or conclusions of the review entity subject to the limitations of sections 2 and 3. The immunity in this section shall not apply to a person, organization, or entity that acts with malice."

MCL 331.532; MSA 14.57(22).

"The release or publication of the proceedings, reports, findings, and conclusions of a review entity shall be for 1 or more of the following purposes;

"(a) To advance health care research or health care education.

"(b) To maintain the standards of the health care profession.

"(c) To protect the financial integrity of any governmentally funded program.

"(d) To provide evidence relating to the ethics or discipline of a health care provider, entity, or practitioner."

MCL 331.533; MSA 14.57(23).

"The identity of any person whose condition or treatment has been studied shall be confidential and such person's name and address shall be removed from the record before the review entity releases or publishes it *[sic]* proceedings, reports, findings and conclusions, and, except for the purposes set forth in section 2, all proceedings, reports, findings and conclusions of review entities under this act are confidential and shall not be *discoverable* or used as evidence in an action for personal injuries based upon malpractice, lack of informed consent or negligence."

entities that *choose* to disclose information to a review entity, including, presumably, the department. Such persons, organizations, and entities are immunized from liability so long as they act with-. out malice and the information is released for one of the following purposes:

> (a) To advance health care research or health care education.
> (b) To maintain the standards of the health care professions.
> (c) To protect the financial integrity of any governmentally funded program.
> (d) To provide evidence relating to the ethics or discipline of a health care provider, entity, or practitioner. [MCL 331.532; MSA 14.57(22).]

The subpoena indeed may have requested information for permissible purposes, *i.e.,* paragraphs (b) and (d). Release of such information, however, is clearly discretionary according to MCL 331.531; MSA 14.57(21) which provides that "[a] person, organization or entity *may* provide information." (Emphasis added.) The act does not provide authority for the proposition that disclosure to the department is mandatory.[10]

---

[10] We do not suggest that a hospital may rely on this language giving it discretion to release peer review committee records to avoid legitimate requests by the board for information relating to disciplinary actions. Again, we emphasize a hospital's *duty* to cooperate with such investigations by reporting, as was done here, discipline taken and the relevant circumstances. And, the privilege is a narrow one, applying only to "[t]he records, data and knowlege collected for or by individuals or committees" assigned a peer review function. MCL 333.20175(5), 333.21515; MSA 14.15(20175)(5), 14.15(21515). *Marchand v Henry Ford Hospital,* 398 Mich 163; 247 NW2d 280 (1976). A claim that certain documents are not privileged may be presented to a circuit court for a hearing. *Monty v Warren Hospital Corp,* 422 Mich 138; 366 NW2d 198 (1985); *Marchand, supra.* That is not the situation in this case, however. Here the Attorney General concedes that the request was for peer review committee records.

CONCLUSION

We conclude, therefore, that the peer review committee information requested in the investigative subpoena is statutorily protected from discovery by the board. To hold otherwise would require us to create an exception to the privilege granted such information by the Legislature; that is not for us to do.

Affirmed.

No costs, a statutory interpretation being involved.

WILLIAMS, C.J., and LEVIN, RYAN, BRICKLEY, and CAVANAGH, JJ., concurred with RILEY, J.

BOYLE, J. We respectfully dissent.

In essence, the appellees' argument is that 1) since the confidentiality provisions of article 17 provide that review function records "shall be used only for the purposes provided in this *article*" (rather than in this *act*) these records are unavailable in an article 15 investigation, and 2) an article 15 subpoena for this material is precluded by article 17's confidentiality provisions that peer review materials "shall not be available for court subpoena."

Thus, on the one hand, appellees contend that articles 15 and 17 are to be read separately and, on the other, that article 17 is to be read in conjunction with and as a limitation on article 15.

The statutes are complementary and must, under traditional rules of statutory interpretation, be construed together to give effect to each. *Reed v Secretary of State,* 327 Mich 108, 113; 41 NW2d 41 (1950) ("Statutes *in pari materia* should be construed together, particularly when, as here, they were passed or re-enacted in the same legislative session . . .").

So construed, it is clear that articles 15 and 17 are designed to provide a means of regulating health care licensees which contemplate that certain materials[1] relating to the peer review process are available to the licensing board.

## I

THE CONFIDENTIALITY PROVISIONS OF ARTICLE 17
DO NOT BAR THE BOARD OF MEDICINE AND THE
DEPARTMENT OF LICENSING AND REGULATION FROM
OBTAINING REVIEW ENTITY MATERIALS FOR USE IN
INVESTIGATIONS

The Board of Medicine is the state agency charged under article 15 of the Public Health Code with regulating and licensing certain individual medical professionals, including physicians. In carrying out its responsibilities the board is empowered to *request,* receive, and evaluate reports from health care facilities licensed under article 17, including hospitals, as to discipline taken by the facility against an individual professional (where the action is related to the safety and competence of practice) to determine whether grounds for disciplinary action by the board exist. MCL 333.16243; MSA 14.15(16243) (emphasis added). Article 15 expressly provides that the board may request, receive, and evaluate

> [r]eports from any other appropriate source necessary for determination of the competency and safety of the practice of a licensee. Appropriate sources include appointed public and private pro-

---

[1] This case does not raise, and we therefore do not address, the question what effect the differing statutory language describing review entity records has. See, *e.g.,* MCL 333.20175(5), 333.21515; MSA 14.15(20175)(5), 14.15(21515) ("records, data, and knowledge"); MCL 331.532; MSA 14.57(22) ("proceedings, reports, findings and conclusions").

fessional *review entities* and public and private
health insurance programs. [MCL 333.16243(d);
MSA 14.15(16243)(d). Emphasis added.]

Article 17 imposes a duty on hospitals to "coop-
erate with the department in the enforcement of
this part," and requires "that the physicians and
other personnel working in the hospital and for
whom a license or registration is required be
currently licensed or registered." MCL
333.21513(b); MSA 14.15(21513)(b).

Article 17 further requires any health care facil-
ity or agency to "report to the appropriate licens-
ing board and to the department not more than 30
days after any disciplinary action has been taken
against a member of the medical staff, and the
relevant circumstances, *for any of the grounds set
forth in section 16221* [of article 15]." MCL
333.20175(4); MSA 14.15(20175)(4) (emphasis
added). Further, the article requires the Depart-
ment of Public Health, the state agency charged
with the licensing and regulation of health care
facilities, to "forward the evidence it has to the
appropriate licensing agency" if the department's
investigation "determines that a person licensed to
practice a profession in this state has violated the
applicable licensure statute or the rules promul-
gated under that statute . . . ." MCL 333.20155(6);
MSA 14.15(20155)(6).

Thus, insofar as physician licensees are con-
cerned, articles 15 and 17 provide an interrelated
scheme of state supervision. The board as the only
state agency which has the ability to impose li-
cense revocation or other license conditions, is
empowered to request and receive reports "from
any other appropriate source" in order to deter-
mine the competency and safety of an individual
licensee's practice. Such sources include private

professional review entities as well as hospitals who have taken disciplinary action against a licensee. MCL 333.16243(a), (d); MSA 14.15(16243)(a), (d).

Both health care facilities and the Department of Public Health are required to report to the board discipline taken against, or information about, an article 15 licensee relating to grounds which the Department of Licensing and Regulation may investigate under § 16221 of article 15. MCL 333.16221, 333.20155(6), 333.20175(4); MSA 14.15(16221), 14.15(20155)(6), 14.15(20175)(4). Hospitals licensed under article 17 must ensure that their medical personnel are licensed or registered as required under article 15.

These provisions demonstrate that, by the very terms of the Public Health Code, articles 15 and 17 are interrelated, and also that one of the purposes of article 17 is to facilitate the regulation and investigation of individual health care professionals. As such, the confidentiality provisions of article 17, MCL 333.20175(5), 333.21515; MSA 14.15(20175)(5), 14.15(21515), which provide that review entity records, data, and knowledge "shall be used only for the purposes provided in this article," themselves contemplate the availability of these records to the board and the Department of Licensing and Regulation in an investigation of an individual licensee. In short, one of the purposes of article 17 is the regulation of individual licensees practicing in hospitals. The method of achieving this purpose is the reporting requirement. The records are thus available to carry out a purpose of article 17.

Consideration of legislative history also supports this conclusion. In 1975 the Michigan Legislature enacted legislation in response to what was nation-

ally perceived to be a medical malpractice crisis.[2] Reporting requirements were imposed on hospitals and professional societies for the first time,[3] and the degree of confidentiality to be accorded review entities was specifically set forth.[4] Section 12, which required the governing body of each hospital to provide for review entities, was amended to provide that:

> (2) All records, data, and knowledge collected for or by individuals or committees assigned this review function are confidential and shall be used only for the purposes provided in this act, shall not be public records and shall not be available for court subpoena, *except as provided in subsection (4).*
>
> \* \* \*
>
> (4) *A hospital shall report to the appropriate medical licensing board within 30 days the name of a person and the relevant circumstances causing any of the following:*
> (a) The resignation of the person from the medical staff.
> (b) The removal or suspension of a person from the medical staff.
> (c) Any other disciplinary action relating to professional practice taken against a member of the medical staff. [1975 PA 111, amending MCL 331.422; MSA 14.1179(12). Emphasis added to indicate 1975 amendments.]

Thus, this legislation imposed a duty to report upon hospitals and added an express exception to the confidentiality provision with regard to disci-

---

[2] Siedel, *Malpractice reform in Michigan,* 1976 Det C L R 235.

[3] See, *e.g.,* 1975 PA 107, enacting MCL 338.1811a; MSA 14.542(11a); 1975 PA 111, amending MCL 331.422; MSA 14.1179(12).

[4] See, *e.g.,* 1975 PA 143, amending MCL 338.1805; MSA 14.542(5); 1975 PA 119, amending MCL 331.531-331.533; MSA 14.57(21)-14.57(23).

plinary action relating to professional practice taken against a member of the medical staff.

Included in the 1975 legislation was an amendment of MCL 331.531, 331.532, 331.533; MSA 14.57(21), 14.57(22), 14.57(23). 1975 PA 119. Section 1 defines "review entity," and provides immunity from liability of any kind to persons who, in good faith, give "information or data" to a review entity, and to review entities and their members for release or publication of review entity "proceedings, reports, findings, and conclusions." Section 2, which had previously provided that review entities could publish such material only for medical research or education was amended to specifically provide immunity from liability to peer review entities for the disclosure of material relating to discipline. The act provides that

> [t]he release or publication of the proceedings, reports, findings, and conclusions of a review entity shall be for 1 or more of the following purposes:
>
> (a) To advance health care research or health care education.
>
> (b) To maintain the standards of the health care professions.
>
> (c) To protect the financial integrity of any governmentally funded program.
>
> (d) *To provide evidence relating to the ethics or discipline of a health care provider, entity, or practitioner.* [Emphasis added.]

The amendment thus expanded the number of reasons for which a review entity could release and publish such material in good faith without civil liability to include the provision of evidence against a health care practitioner. Additionally, the amendment provided for a distinction between peer review material that was privileged and that which could be disclosed. The statute provides that

except for the purposes set forth in section [2], all proceedings, reports, findings and conclusions of review entities under this act are confidential and shall not be discoverable or used as evidence in an action for personal injuries based upon malpractice, lack of informed consent or negligence.

The Legislature thus created an integrated scheme for both the protection of review entity confidentiality and the state regulation of health care practitioners. Review entity records are protected from discovery and use in civil malpractice litigation, but are clearly made available to the state agency responsible for the licensing and regulation of individual medical professionals.

In 1978 the Legislature enacted the Public Health Code, MCL 333.1101 *et seq.;* MSA 14.15(1101) *et seq.*

MCL 331.422; MSA 14.1179(12), which contained the hospital reporting requirement, was repealed and reenacted as part of the Public Health Code. As reenacted these sections now read:

(4) A health facility or agency with a medical staff shall report to the appropriate licensing board and to the department not more than 30 days after any disciplinary action has been taken against a member of the medical staff, and the relevant circumstances, for *any of the grounds set forth in section 16221* [of Article 15]. [Emphasis added.]

(5) The records, data, and knowledge collected for or by individuals or committees assigned a professional review function in a health facility or agency are confidential, shall be used only for the purposes provided in this article, are not public records, and are not subject to court subpoena. [MCL 333.20175; MSA 14.15(20175).]

The owner, operator, and governing body of a hospital licensed under this article:

(a) Are responsible for all phases of the opera-

tion of the hospital, selection of the medical staff, and quality of care rendered in the hospital.

(b) Shall cooperate with the department in the enforcement of this part, and require that the physicians, dentists, and other personnel working in the hospital and for whom a license or registration is required be currently licensed or registered.

(c) Shall assure that physicians and dentists admitted to practice in the hospital are granted hospital privileges consistent with their individual training, experience, and other qualifications.

(d) Shall assure that physicians and dentists admitted to practice in the hospital are organized into a medical staff to enable effective review of the professional practices in the hospital for the purpose of reducing morbidity and mortality and improving the care provided in the hospital for patients. This review shall include the quality and necessity of the care provided and the preventability of complications and deaths occurring in the hospital. [MCL 333.21513; MSA 14.15(21513).]

The records, data, and knowledge collected for or by individuals or committees assigned a review function described in this article are confidential and shall be used only for the purposes provided in this article, shall not be public records, and shall not be available for court subpoena. [MCL 333.21515; MSA 14.15(21515).]

Comparison of this language with that of MCL 331.422; MSA 14.1179(12) set forth above, clearly indicates that the Public Health Code provision constituted a reorganization of the section for purposes of conformity with the code, rather than a substantive change in the requirements and policy of the section.

We are not persuaded that deletion of the words "except as provided in subsection (4)" indicates a legislative purpose that peer review records not be available. Rather, we would conclude from the structure of the provisions and the express refer-

ence to article 15 that the regulation of licensees through the reporting requirement (contained in article 17 as § 20175[4]) is one of "the purposes provided in this article" for which review entity records shall be available.

The confidentiality provisions relied upon by the hospital were, in the 1975 legislation, a part of a statutory scheme which expressly limited confidentiality with respect to the reporting requirements, expressly provided that review entity materials be available as evidence relating to the ethics or discipline of practitioners, and which provided a new protection against discovery or use of review entity records in civil malpractice actions. We find it much more likely that when the Legislature substantially incorporated into article 17 the duty of reporting discipline which might constitute an article 15 violation it intended that review entity materials relating to this purpose also be available.

Moreover, we note that the Public Health Code itself provides that it is "intended to be consistent with applicable . . . state law and shall be construed, when necessary, to achieve that consistency." MCL 333.1111; MSA 14.15(1111). While MCL 331.531-331.533; MSA 14.57(21)-14.57(23) were not among the provisions repealed and reenacted as part of the Public Health Code in 1978, these sections providing immunity for review entities which release review entity materials "to provide evidence related to the ethics or discipline of a health care . . . practitioner," § 2(d), are extant and have been amended in non-pertinent part since 1978, see 1980 PA 3, § 1. These recent amendments confirm the continuing vitality of these sections. *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480, 487; 124 NW2d 286 (1963).

As statutes which pertain to the same subject matter as the Public Health Code, they must be construed consistently therewith, unless to do so would do violence to a clear expression of the Legislature. In so construing article 17 and this statute, which grants immunity for the publication of peer review materials relating to "the discipline of . . . a health care practitioner," we find in § 2(d) compelling evidence that the Legislature did not exempt peer review materials from disclosure. Principles of statutory construction and the history of the sections show that the confidentiality provisions of article 17, MCL 333.20175(5), 333.21515; MSA 14.15(20175)(5), 14.15(21515), must continue to be construed as *in pari materia* with MCL 331.531-331.533; MSA 14.57(21)-14.57(23).

We find wholly unpersuasive appellant's claim that MCL 331.532; MSA 14.57(22) indicates a legislative intent that "any such disclosure is to be determined by the hospital review committee in its own discretion . . . ." Viewed in the light of the simultaneous amendment of MCL 331.422(2), (4); MSA 14.1179(12)(2), (4), it is clear that § 2(d) of MCL 331.532; MSA 14.57(22) was intended as a broad directive that the proceedings, reports, findings, and conclusions of a review entity be available to provide evidence relating to the ethics and discipline of any individual engaged in the practice of medicine.

The Department of Licensing and Regulation and the Board of Medicine are the only entities in the state having the authority to investigate, regulate, and impose sanctions such as license revocation, suspension, or limitation on individual medical professionals. We agree with appellants that to permit a hospital to unilaterally determine what information is relevant when an investigation of an individual licensee is called for under article 15

would frustrate the purposes of the Public Health Code "to protect and promote the public health" and "to regulate occupations, facilities, and agencies affecting the public health," Preamble, Public Health Code, MCL, Chapter 333; MSA, Title 14, Chapter 111. As this controversy itself demonstrates, the perspective of a hospital or a hospital review committee may differ substantially from the broader public perspective of the agency charged with the responsibility to investigate professional misconduct on a statewide basis.

In agreeing with the hospital's claim that its review entities have unilateral discretion to determine what information and records they will make available to the board, the majority points to the language of MCL 331.531; MSA 14.57(21) that "[a] person, organization or entity *may* provide information" (emphasis added).

We cannot agree that the purpose of this language was to allow the review entity to decide what information it would disclose. The language of the statute is permissive, because the initial purpose is to permit disclosure without liability. More importantly, those persons who under MCL 331.531; MSA 14.57(21) *may* provide information to review entities, including to the department and boards under article 15, can be *compelled* to give that information to the same state agencies by a subpoena issued by a circuit court upon application by the Attorney General. MCL 333.16235(1); MSA 14.15(16235)(1). It strains credulity to conclude that the Legislature would permit all others to be compelled to give information to the board, expressly provide that review entities' proceedings, reports, findings, and conclusions be available in certain situations, expressly grant immunity to review entities, and yet leave to the discretion of those entities the unilateral decision as to what

information they will make available to the state agency charged with the protection of the public health.

We are thus unable to accept the proposition that the Legislature intended by use of the words "for purposes of this article" to limit the department's access to peer review materials and thereby negate the express language of both MCL 331.532(d); MSA 14.57(22)(d) and MCL 333.16243; MSA 14.15(16243). In our view this is far too slender a reed on which to erect a construction which undoes a regulatory scheme carefully crafted to protect the public against incompetent practitioners.

We would conclude that the term "shall be used only for the purposes provided in this article" does not exclude the article 15 functions of regulating health care professionals, but rather that one of the purposes of article 17 is that function. Article 17 itself provides:

A hospital shall meet the minimum standards and rules authorized by this article and shall endeavor to carry out practices that will further protect the public health and safety, prevent the spread of disease, alleviate pain and disability, and prevent premature death. [MCL 333.21521; MSA 14.15(21521).]

It is for these purposes that peer review committees must be established, and it is for this ultimate purpose that the department may have access to the materials described in MCL 331.532; MSA 14.57(22) and article 15.[5]

---

[5] As the majority acknowledges, *ante,* p 170, the department is able "to utilize much the same information in its investigation as was available to the hospital's peer review committee." Given this fact, we see no justification in either principle or policy for requiring, as the majority does today, that the department obtain this information in a

## II

## THE MEANING OF "COURT SUBPOENA"

Appellant's second contention is that the words "shall not be available for court subpoena" in article 17 preclude issuance of the subpoena here issued by the Ingham Circuit Court. Such a claim is in clear conflict with article 15. As we have seen, the board and the Department of Licensing and Regulation have the right to review entity records for use in an investigation preceding administrative action. In the event that the request is not complied with, MCL 333.16235(1); MSA 14.15(16235)(1) authorizes the Attorney General to apply to a circuit court for an investigative subpoena. The circuit court is entrusted with the obligation to determine the scope and propriety of the request, and to limit, as the Ingham Circuit Court did, the subpoena of the documents as "not . . . subject to court subpoena for any other purpose."

Since the Attorney General does not have subpoena power under article 15, to construe the words of article 17 as the hospital advocates would leave the department with a right to the materials requested, but without an enforcement remedy. We do not believe the Legislature intended to permit hospitals to thus frustrate an inquiry into a reported potential violation of § 16221.

A common-sense construction of these statutes *in pari materia* requires the conclusion that the phrase "not ` . . . available for court subpoena" in article 17 does not refer to an investigative subpoena in aid of a contemplated *administrative* proceeding pursuant to MCL 333.16235; MSA 14.15(16235). While not necessary to this decision, we find it much more likely that by using the

---

long and arduous procedure, rather than in the most efficient and effective manner possible.

phrase "court subpoena" in article 17, the Legislature in article 17 intended to preclude a subpoena for peer review records for discovery or for use as evidence in private personal injury actions.

## III

### POLICY CONSIDERATIONS

Finally, we do not find persuasive appellees' contention that policy considerations require that the confidentiality of the peer review process must be absolute.[6] To be sure, there is a legitimate public interest in encouraging participation in peer review. The Legislature has sought to accommodate that interest by providing immunity for all good-faith disclosures to or by a hospital peer review committee and has provided that the records transmitted to the board are not public and are not available in civil proceedings. MCL 333.20175(5), 333.21515; MSA 14.15(20175)(5), 14.15(21515). Given such insulation from involvement in civil litigation arising from good-faith peer review action, we are unwilling to assume that participating physicians would shirk their sworn obligation to the service of humanity by eschewal or perfunctory participation.[7]

The Legislature has accommodated the public interest in the quality of health care by providing for the availability to the department of peer review material involving disciplinary action for

---

[6] The majority cites *Bredice v Doctors Hospital, Inc,* 50 FRD 249 (D DC, 1970). However, that case involved a civil malpractice action, not an administrative investigation by the state agency charged with protecting the public health. Indeed, we have found no case supporting the appellee's position.

[7] See, *e.g.,* Declaration of Geneva:

". . . I solemnly pledge myself to consecrate my life to the service of humanity. I will give my teachers the respect and gratitude which is their due; I will practice my profession with conscience and dignity; the health of my patient will be my first consideration; I will respect the secrets which are confided in me; I will maintain by all the means in my power, the honor and the noble traditions of the medical

any of the grounds committed to the jurisdiction of the Board of Medicine under MCL 333.16221; MSA 14.15(16221). The receipt of such information permits the board to begin the investigation in an expeditious manner rather than re-creating the materials. The public interest is also served by an interpretation which prevents the hospital committee from censoring the information.

We conclude that the Legislature has struck the balance between shielding the review process and the greater public interest in protecting the health care consumer from unsafe and incompetent licensees by allowing the board access to peer review files maintained by a hospital, which resulted in the discipline of a physician, for use in an investigation of any of the grounds which would be a violation of § 16221 of article 15.

We would reverse the judgment of the Court of Appeals and remand the case to the Ingham Circuit Court for further proceedings.

profession; my colleagues will be my brothers; I will not permit considerations of religion, nationality, race, party politics or social standing to intervene between my duty and my patient; I will maintain the utmost respect for human life, from the time of conception; even under threat, I will not use my medical knowledge contrary to the laws of humanity. I make these promises solemnly, freely and upon my honor." Adopted by the Second General Assembly of the World Medical Association (1948), Taber's Cyclopedic Medical Dictionary (15th ed), Philadelphia: F. A. Davis Co., p 426. See also the Hippocratic Oath.

The ability of the Department of Licensing and Regulation and the board to obtain review entity records for use in an investigation does not exacerbate the concerns individuals might have about disclosing information to a review entity, or about becoming a member of such an entity. Any person having provided information to a review entity, including a member of a review entity, is subject to suit upon an allegation of bad-faith disclosure, MCL 331.531; MSA 14.57(21); the department's investigative use of such review entity records does not enable a potential litigant to discover who has provided information to the review entity. The department's investigative use of the review entity records does not increase the likelihood of suit against review entity members, or against those who provided information to the entity. Thus, the availability of review entity records to the department and the board for use in an investigation does not create a danger of suit that would otherwise not exist.